Mrs. A. L. SMITH, Petitioner,

v.

EAGLE STAR INSURANCE CO. Ltd.,
Respondent.

No. A–9532.

Supreme Court of Texas.

July 24, 1963.

Rehearing Denied Oct. 2, 1963.

Calloway Huffaker, Harold Green, Ta-
hoka, for petitioner.

Key, Carr & Clark, Aubrey J. Fouts,
Lubbock, for respondent.

HAMILTON, Justice.

This is a suit to recover on a fire insur-
ance policy for the loss of a house brought
by Mrs. A. L. Smith, petitioner, against
Eagle Star Insurance Company, Ltd., re-
spondent. Judgment was for the petition-
er in the trial court. The Court of Civil
Appeals reversed and rendered judgment
for respondent insurance company. 365 S.
W.2d 23. Mrs. Smith has appealed to
this court.

Both parties filed motions for summary
judgment in the trial court. The trial
court granted petitioner's motion for sum-
mary judgment and denied that of re-
spondent. Respondent insurance company
brought one point of error to the Court
of Civil Appeals, which is as follows:

"The trial court erred in failing to
grant the motion for summary judg-
ment of the defendant in the court be-
low because the uncontradicted facts
show that the plaintiff had no insurable
interest in the property covered by
the policy of insurance in question."

The Court of Civil Appeals sustained
this point of error, holding as a matter of
law that Mrs. Smith, petitioner herein, had
no insurable interest in the property
covered by the policy of insurance in ques-
tion.

The petitioner maintains by her points of
error that she derived a pecuniary benefit
and advantage by the preservation an

continued existence of the house in question, and that she suffered pecuniary loss because of its destruction, and that the Court of Civil Appeals erred in holding that the uncontradicted evidence established the lack of insurable interest on the part of the petitioner.

She also maintains that under the pleadings, the affidavits and the depositions before the court that the trial court properly granted her motion for summary judgment, it being conclusively shown that she had an insurable interest in the property in question.

There does not seem to be much controversy as to the facts in this case. The problem is more the interpretation of the undisputed facts and applying the applicable law thereto. Mrs. Smith, the petitioner here, and her husband acquired Section 455, Block D, John H. Gibson Survey in Yoakum County, Texas, in the latter part of 1940 or early 1941. At this time Mrs. Smith and her husband thought that Section 455 adjoined the eastern boundary line of New Mexico. There was a county road running north and south along the New Mexico east boundary line, and being on the west side of what Mrs. Smith thought was Section 455. Along this road and on the west side of the south half of Section 455 was a set of improvements, including the house into which she and her husband and family moved in 1941. Some time after Mrs. Smith and her husband took possession of Section 455 together with these improvements, she heard by word of mouth that her house was located on a strip of land claimed by the State of Texas, and designated as Section 456, this strip of land being between Section 455 and the New Mexico boundary line. The amount of acreage in this strip was not indicated, but it was described as being approximately three miles long, twenty-five yards wide at the north end, which began at the northwest corner of said Section 455, and one hundred yards wide at the south end. Several years after 1941 the Smiths sold the north half of Section 455. They continued to occupy said improvements and use them as a base of operations for farming the south half of Section 455 until Mrs. Smith's husband's death in 1951. Their son, who lived with Mrs. Smith, operated the farm for one year and in the fall of 1952 Mrs. Smith, who had acquired the interests of her children in and to the land, leased the premises to a Mr. McPherson for a term of ten years at a rental of $2,000.00 per annum. As a part of the consideration for said lease, the lessee agreed to and did drill two ten-inch irrigation wells, one of which was on the strip in question. Mr. McPherson in turn leased to Mr. Benthal, who paid the rent each year, although he sublet the land to a Mr. Newton, who was occupying the improvements at the time of the loss for which this suit was brought.

In January of 1959 respondent company issued its fire and extended coverage policy to Mrs. Smith on a stucco dwelling house located on the "south half of Section 455 and Section 456, Block D, known as the Gibson Survey, about 14 miles west from Plains on the east side of a state line road in Yoakum County, Texas." This policy was for a five-year term at a premium of $288.00. The house covered by this policy was completely destroyed by fire in February, 1960.

The depositions of Mrs. Smith and her son who acted as her agent in leasing the place and in procuring the insurance policy were on file in the record. Both on the basis of hearsay testified that the house was located on Section 456 or state land, and that they received no rent for the house itself. However, the son testified in connection therewith in answer to the following question: "Would it be correct to say that since this lease was executed your mother has not received any income from the use of the house?" He answered: "Only just the way it was connected with the place."

The Court of Civil Appeals, based on the testimony of Mrs. Smith and the son

that the house was located on state land and that they had received no rent for the house itself, concluded that Mrs. Smith had no insurable interest in the house. Mrs. Smith, by affidavit attached to her motion for summary judgment, said she recognized that the state claims the strip of land designated as Section 456, but for twenty years she has occupied and used the strip of land in question as part of the south half of Section 455, and she insists that the improvements and house in question belong to her.

■ We do not agree with the conclusion reached by the Court of Civil Appeals that because the house was located on state land and Mrs. Smith did not receive any rent for the house itself that those facts conclusively establish that Mrs. Smith had no insurable interest in the house. The Court of Civil Appeals stated the generally accepted rule to be "that an insurable interest exists when the assured derives pecuniary benefit or advantage by the preservation and continued existence of the property or would sustain pecuniary loss from its destruction," citing Rolater v. Rolater, (Tex.Civ.App.) 198 S.W. 391, and Canfield v. Newman, (Tex.Civ.App.) 265 S.W. 1052. We agree with this rule, but we do not agree with the Court of Civil Appeals' application of the rule to the facts of this case.

■ It is not always necessary to prove title in an insured in order to prove an insurable interest in the property. In 29 American Jurisprudence, 781, Insurance, Section 438, it is said:

"The principle may be stated generally that anyone has an insurable interest in property who derives a benefit from its existence or would suffer loss from its destruction. * *

"The courts of this country, as well as of England, are well disposed to maintain policies where it is clear that the party insured had an interest which would be insured in the event the peril

insured against should happen. Indeed, it is not necessary, to constitute an insurable interest, that the interest be such that the event insured against would necessarily subject the insured to loss; it is sufficient that it might do so, and that pecuniary injury would be the natural consequence. * * *

"An insurable interest in property does not necessarily imply a property interest in, or a lien upon, or possession of, the subject matter of the insurance, and neither the title nor a beneficial interest is requisite to the existence of such an interest; it is sufficient that the insured is so situated with reference to the property that he would be liable to loss should it be injured or destroyed by the peril against which it is insured. * * *"

When we view the testimony in the depositions and the affidavits in the light most favorable to the respondent we can not escape the conclusion that there is ample evidence that Mrs. Smith had an insurable interest in the house in question. There is no question but that the use of the house in connection with the farming operation of Section 455 was a valuable asset both to her and her husband while they were working the farm and also to her tenants. She leased the farm and improvements in 1952 for ten years. During said time the tenant desired to make some improvements on the house and requested her to help with the expense. She paid $200.00 on the improvements. This fact shows that she recognized the value to her of having her tenant satisfied with the house.

■ Regardless of whether the state owned the land on which the house was located, it is undisputed that Mrs. Smith had the undisturbed use of the house long prior to and at the time the policy was written and at the time the loss occurred. The fire caused her a loss of this use. When the history of the use of the house in connection with the farm is reviewed no

other conclusion can be reached but that she suffered a pecuniary loss by reason of the fire. The fact that Mrs. Smith did not receive any money rent for the house itself is not contrary to this conclusion.

We hold, therefore, that since petitioner lost the use of the house in question, and since such loss resulted in a pecuniary loss to her, that she did as a matter of law have an insurable interest in the house.

The judgment of the Court of Civil Appeals is reversed and that of the trial court is affirmed.