340 So.2d 429 (1976)
SOUTHEASTERN FIDELITY INSURANCE COMPANY et al., Defendants-Appellants,
v.
Melvin GANN, Plaintiff-Appellee.
No. 48870.
Supreme Court of Mississippi.
November 30, 1976.
Rehearing Denied December 14, 1976.
*430 Aultman, Pope, Aultman, Van Slyke & Tyner, Thomas W. Tyner, Hattiesburg, for defendants-appellants.
Armis E. Hawkins, Houston, Darden & Sumners, Lester F. Sumners, New Albany, for plaintiff-appellee.
Before PATTERSON, SUGG and WALKER, JJ.
PATTERSON, Presiding Justice, for the Court:
Melvin Gann brought suits in the Circuit Court of Chickasaw County to obtain the proceeds of certain insurance policies issued by Southeastern Fidelity Insurance Company, Industrial Fire & Casualty Company, and Balboa Insurance Company, totaling $20,000. The suits were consolidated and tried to the court without a jury. The court found for the plaintiff in the sum of the policies and the defendants, aggrieved, present this joint appeal.
Gann owned and lived upon a farm near Houston, Mississippi. Influenced by the organizational structure of the Houston Country Club, a nonprofit corporation, he determined to create a working-man's counterpart. His efforts resulted in the creation of the Ponderosa Country Club, Inc., the building being constructed on land adjacent to Gann's residence. The building was financed through funds borrowed by Gann, James Kyle and Shorty Black. It was a single story structure, 30 x 120 feet, with concrete block walls and a shingle roof.
The club was used for informal parties in which dancing was one of the entertainments. In 1972 the sheriff objected to dancing at the club resulting in sharp curtailment of this activity. Because dancing was no longer permitted, the club directors voted to partition 30 x 90 feet of the building into three rental apartments to defray club expenses. The front 30 x 30 feet was maintained as a club for the use of its members.
Gann, president of the Ponderosa Country Club, procured the insurance on the club building. It was obtained through Robert Scott, an employee of the Tabb Insurance Agency of Houston, Mississippi. Gann contacted Scott to secure insurance upon his home, his airplane and the club building as he thought it convenient to have his insurance with one agency. Gann informed Scott that fire and hazard insurance were desired on "the 3-family dwelling in the back part of the club ... the ninety feet." Scott was notified of the intention to retain the remaining space in the front of the building as a club.
Scott agreed to obtain insurance upon the building consistent with these uses, but was unable to do so from companies licensed by the state. He thereupon obtained coverage from the appellants, all nonadmitted insurers within the state, effective May 6, 1972.
The affidavit of Scott, the agent, certified to be correct by Gann, the insured, "setting forth facts in complete detail," required by Mississippi Code Annotated section 83-21-23 (1972) related to purchasing insurance from a nonadmitted company, was not executed until November 9, 1972. Although the policies were issued to Melvin Gann individually, he denied this was his request, testifying that he asked Scott to insure the Ponderosa Country Club. However, he did not deny his signature upon the affidavit indicating he owned the "3-Family Tenant Dwelling."
Gann dealt only with Scott in obtaining the insurance. He did not sign an application for coverage nor was he requested to do so. It was stipulated that the representations concerning insurance on the club building were those of Gann. However, he had no knowledge of how the insurance was obtained, stating,"I just left it up to him." The three policies were mailed to Gann who never read them. Several weeks thereafter Scott and an unidentified individual came to Gann's property, inspected his home and *431 had the opportunity to observe the club building although neither asked to examine it. Gann was billed by Scott and paid the premiums on the insurance to him.
On December 9, 1972, the club building was destroyed by fire and Gann was thereafter interrogated under oath in accord with the policies' provisions. He answered all questions except those concerning title to the club property and in this refusal referred the insurers to the county land records for the status of title.
Although Scott was subpoenaed by the plaintiff, he was not called to testify by either party. The only witness was Gann and his testimony is undisputed. It establishes that the club was his brainchild and was constructed with funds borrowed by Gann, James Kyle and Shorty Black on lands conveyed to the club by Gann or through his efforts. The grantors were Mrs. Louise Gann Posey, Mrs. Bobby Gann Hurt and Mrs. Bonnie Gann Wilkes. Gann was asked, "So you had deeded the land to Ponderosa Country Club, Inc. Is that right?" He responded, "Yes, sir."
Additionally, Gann was the club's president from its beginning until he purchased, after the fire, all outstanding stock, thereby becoming, according to his reasoning, the sole owner of the corporation and as such conveyed, or attempted to convey, the corporate property to himself. The previous insurance on the building was in the corporate name.
These suits were brought in Gann's name although the Ponderosa Country Club, Inc. was the record owner. In this circumstance Gann asserts that it is immaterial whether the proceeds are paid to the Ponderosa Country Club, Inc. or to the Ponderosa Country Club, Inc. and himself.
The trial judge found that Scott was the agent of the insurers and that Gann was the owner of the corporation with an insurable interest in the property. Therefore a judgment for $20,000, the sum of the policies, was awarded the plaintiff.
The appellants urge for reversal that the trial court erred (1) in not finding for the appellants because the appellee failed to answer questions in an examination under oath material to the risk, (2) in finding Robert Scott to be the agent of the appellants, (3) in failing to find for the appellants on the issue of misrepresentation of the insured property, and (4) in failing to find the plaintiff had no insurable interest in the insured property.
We are of the opinion the first assignment is without merit. It is beyond argument that an insurer has a right to interrogate the insured upon questions material to the contract when such provision is parcel of the policy. This generalization, however, does not mean that each uncertain answer, or that referring the insurer to a source of information would cancel the policy. In Taylor v. Fireman's Fund Insurance Co., 306 So.2d 638 (Miss. 1974), we cited with approval from Claflin v. Commonwealth Insurance Co., 110 U.S. 81, 3 S.Ct. 507, 28 L.Ed. 76 (1883), the following:
The object of the provisions in the policies of insurance, requiring the assured to submit himself to an examination under oath, to be reduced to writing, was to enable the Company to possess itself of all knowledge, and all information as to other sources and means of knowledge, in regard to the facts, material to its rights, to enable it to decide upon its obligations, and to protect it against false claims. And every interrogatory that was relevant and pertinent in such an examination was material, in the sense that a true answer to it was of the substance of the obligation of the assured. ... (306 So.2d at 645)
See also Standard Ins. Co. v. Anderson, 227 Miss. 397, 86 So.2d 298 (1956). The response to the questions of appellants' counsel, contended to forfeit the policies, was not a refusal to answer, but was a reference to information which would have revealed the status of title. The questions to Gann and his answers were:
Q. Who owned the land on which this building was located?
A. The Club.
Q. The Ponderosa Club, Inc.?

*432 A. Yes, sir.
Q. So you had deeded the land to Ponderosa Country Club, Inc. Is that right?
A. Yes, sir.
Q. Ponderosa Country Club, Inc. actually owned the building and the land on which it was situated?
MR. HAWKINS: [Gann's counsel]
The records over here would speak for themselves. I don't know, myself. You would have to check the records. I would not want to answer something without checking the records, themselves.
MR. AULTMAN:
Do you object to him answering?
MR. HAWKINS:
Yes, sir, without checking the records.
MR. AULTMAN:
Q. On advice of counsel do you refuse to answer?
MR. HAWKINS:
I am telling him that the records, themselves, Mr. Aultman, will speak for themselves. You can check the records.
MR. AULTMAN:
If he knows who owns it, I would like for him to tell me.
MR. HAWKINS:
I don't know if he knows who owns it or not. He would have to see the deed records. It is a title question; it is a legal question in my opinion.
MR. AULTMAN:
Q. Do you refuse to answer that, Mr. Gann?
A. Yes, sir.
All questions of which Gann had knowledge were answered and his refusal, if it be such, to respond to queries concerning title does not, in our opinion, appear to be an attempt to willfully conceal information material to the risk or to otherwise deceive the insurer. In Taylor, supra, relied upon by the appellants, the claimant swore he was the sole owner of a house that burned. The records revealed he owned at best a one-half interest against which there was an indebtedness for the purchase price secured only by Taylor's check drawn upon an insolvent account. By contrast Gann acknowledged the Ponderosa Country Club owned the property, but when prompted by counsel, concluded the records would best reflect the title. His reference seems to be nothing more than a recognition that records are more accurate than memory. The numerous refusals and evasive answers in Taylor, supra, present a far different factual situation from the present, thereby distinguishing it. We conclude that Taylor, supra, does not require a forfeiture of the present policies.
As noted, Gann dealt only with Scott in purchasing the insurance and left all details to him. Scott's endeavors led to the policies being issued by the nonadmitted companies. He billed Gann for the premiums and they were paid by Gann. From these facts the trial judge found that Scott was the agent of the appellants. We agree. Mississippi Code Annotated section 83-17-1 (1972) provides in part:
Every person ... who takes or transmits, ... an application for insurance or a policy of insurance, .. or who shall receive or deliver a policy of insurance of any such company, or who shall examine or inspect any risk, or receive, collect, or transmit any premium of insurance ... or do or perform any other act or thing in the making or consummation of any contract of insurance for or with any such insurance company, ... or who shall ... aid in adjusting any loss for or on behalf of any such insurance company ... shall be held to be the agent of the company for which the act is done or the risk is taken as to all the duties and liabilities imposed by law, whatever conditions or stipulations may be contained in the policy or contract.
The appellants argue, however, that this section has no application to nonadmitted insurance companies because Mississippi Code Annotated section 83-21-31 (1972) has specific application to an unauthorized insurer, thereby eliminating consideration of Section 83-17-1, a general section. Section 83-21-31 provides:

*433 As to any policy or contract issued pursuant to sections 83-21-17 to 83-21-31, and as to any claim for loss or damage arising under any such policy or contract, the cited sections shall apply. As to any such policy or contract issued by an unauthorized insurer in a manner not provided in said preceding sections, sections 83-21-31 to 83-21-51 shall apply.
We think this contention has no merit. The sections preceding Section 83-21-31 relate to the procedural necessities for obtaining insurance, the licensing of agents for nonadmitted companies, their bond and the agent's report. The succeeding sections relate to service of process, acts constituting the insurance commissioner as an agent and related matters. None refer to acts sufficient to constitute an agent. Since this is so, we are of the opinion that Section 83-17-1 does apply. Moreover, Scott became the agent of the appellants under the general law of agency by the present facts. He acted in their behalf in placing the insurance and they accepted his services by issuing the coverage. Both were to profit from the transaction. The trier of facts did not err in this regard. Turner v. Williams, 257 So.2d 525 (Miss. 1972); Engle Acoustic & Tile, Inc. v. Grenfell, 223 So.2d 613 (Miss. 1969); and Overing v. Skrmetta, 218 Miss. 648, 67 So.2d 606 (1953).
It is contended the policies should be cancelled because of material misrepresentations of the insured. In considering this issue we observe that Gann's only communication with the appellants was through his affidavit certifying the correctness of Scott's affidavit of November 9, 1972, for procurement of insurance from a nonadmitted company. It names Melvin Gann as the person for whom insurance was sought and describes the property as a "3-Family Tenant Dwelling."
The policies were effective May 6, 1972, several months prior to the affidavit. Therefore, the representation did not induce the appellants to issue the policies. Moreover, the recitations in the affidavit and certificate were facts known by Scott with nothing to indicate that Gann initiated the affidavit. Scott was aware that a portion of the building was to be continued as a club and, indeed, he had knowledge that it had been previously so used since he set up the bookkeeping for the enterprise. We conclude the contended misrepresentations did not have a material effect upon the issuance of the policies.
Finally, it is urged the policies are unenforceable because Gann had no insurable interest in the Ponderosa County Club. We are cognizant of the general rule that an insurable interest in property must exist in an insured when the contract is entered for it to be effective. The present question is whether Gann had an economic interest in the property although the naked title was in the Ponderosa Country Club, Inc. when the policies were issued.
The property was conveyed to the Ponderosa Country Club by the efforts of Gann. His interest in the club was sufficient for him to borrow, with others, $12,000 toward the construction of the building. He was the president and, as best we can determine from the record, the manager of the enterprise. His actions subsequent to the fire were consistent with his interest preceding it. He paid $8000 to retire an indebtedness against the building and redeemed all outstanding shares of stock. He testified, "I took the full loss." Moreover, the building had an undisputed worth of $40,000 and was insured for one-half of that amount. Additionally, there is no evidence of any interest in the property or the proceeds of the insurance other than that of the appellee.
From these circumstances we are of the opinion the trial court correctly found Gann had an insurable interest in the property even though the legal title was elsewhere. He was subject to economic loss at the time the policies were issued if the building were destroyed. Liverpool & London & Globe Ins. Co. v. Delaney, 190 Miss. 404, 200 So. 440 (1941). And see Aetna Ins. Co. v. King, 265 So.2d 716 (Fla.App. 1972); Skaff v. United States Fidelity & Guaranty *434 Co., 215 So.2d 35 (Fla.App. 1968); and Smith v. Eagle Star Ins. Co., 370 S.W.2d 448 (Tex. 1963), wherein that Court quoted with approval 29 Am.Jur. 781, Insurance, section 438, as follows: "The principle may be stated generally that anyone has an insurable interest in property who derives a benefit from its existence or would suffer loss from its destruction... ." (370 S.W.2d at page 450) The reason for the rule requiring an interest in property upon which insurance is sought is to prevent the coverage from becoming a wagering contract contrary to public policy. 4 Appleman, Insurance Law and Practice, § 2121 (1969). There is no evidence before us indicating these policies were obtained contrary to public policy because of the lack of an insurable interest. We therefore conclude the trial court's finding was correct and surely we cannot state it was manifestly contrary to the evidence. McDaniel Bros. Constr. Co. v. Jordy, 195 So.2d 922 (Miss. 1967).
AFFIRMED.
GILLESPIE, C.J., INZER, P.J., and SMITH, ROBERTSON, SUGG, WALKER, BROOM and LEE, JJ., concur.