454 So.2d 437 (1984)
In re ESTATE OF Rena Gunnell MURRELL, Dec'd E.C. Murrell
v.
Linda Dianne Rutter QUIN and Charles N. Rutter, Joint Executors, et al.
No. 53922.
Supreme Court of Mississippi.
January 18, 1984.
Rehearing Denied September 5, 1984.
Jones H. Hoskins, Brookhaven, for appellant.
Norman B. Gillis, Jr., Gillis & Gillis, McComb, for appellees.
Before BROOM, P.J., and DAN M. LEE and PRATHER, JJ.
DAN M. LEE, Justice, for the Court:
This cause involves two lawsuits which were filed in the Lincoln County Chancery Court and consolidated for trial. The first suit was filed by Linda Dianne Rutter Quin and Charles N. Rutter as individuals and co-executors of their mother's estate. In that suit they sought recovery of fire insurance proceeds from their step-father, E.C. Murrell, as constructive trustee of those proceeds and the return of their mother's jewelry bequeathed to Linda Quin or a judgment for the value of the jewelry. The second suit was brought by the decedent's husband, E.C. Murrell, wherein he sought reformation of the description of one acre of land deeded to him by his wife during her lifetime.
The chancellor held that the misdescription in the deed should be reformed to correctly show the intent of the parties. He also held that there was not sufficient proof to hold Murrell liable for the lost jewelry on a negligence theory. As to the insurance proceeds the chancellor ordered that they should be held in trust with Murrell receiving the benefit of any income *438 therefrom and upon his death the principal was to pass to Dianne Quin and Charles Rutter in equal shares. From this decree the parties both appeal. We affirm the chancellor's decision as to the negligence and reformation of the deed; however, we reverse as to the insurance proceeds being held in trust.
Rena Murrell died testate on July 8, 1980. In her will she devised to her husband, E.C. Murrell, a life estate in their residence with the remainder to her children Linda Dianne Rutter Quin and Charles N. Rutter. They are the step-children of E.C. Murrell. During their marriage Murrell built a residence for himself and Rena on real estate owned by Rena. During the construction Mr. Murrell took out a builder's risk insurance policy in his name on the home. In 1975 the original builder's risk policy was converted into a homeowners policy with the names of "Mr. and Mrs. E.C. Murrell" as the named insured. Later, in 1978, the "Mr. and Mrs." was dropped because of a "computer issue" (not enough space on the computer to issue the policy in both names) and the policy named only "E.C. Murrell," as the named insured. It is not contested that all premiums paid on the policy were paid by Mr. Murrell by checks drawn on his business.
During their marriage Mrs. Murrell received a number of gifts of jewelry from her husband. She gave him a deed to one acre of land on March 21, 1971, for the purpose of building a workshop near their home.
Upon Mrs. Murrell's death her will was probated. In that will she devised to her husband interest in a camp, all livestock, a savings account, the lifetime use of the household furniture, and a life estate in the home together with a ten acre plot from the 110 acres on which the home was situated. The fee simple title to the 110 acres was devised to her two children subject to the life estate in her husband. The personal effects of Mrs. Murrell, including the jewelry involved in this lawsuit were bequeathed to her children.
After Mrs. Murrell's death, Mr. Murrell was given the jewelry by the funeral home director. Mr. Murrell gave one ring, a gift to Mrs. Murrell from a prior husband, to Linda Quin, but put the other jewelry in his home in a dresser drawer. From this location the jewelry was subsequently stolen while Mr. Murrell was in the hospital for treatment for a heart ailment. Only the jewelry was taken during the breakin of Mr. Murrell's home. Mr. Murrell never filed a police report or an insurance claim. Neither did he notify his wife's children of the missing jewelry.
After the death of his wife, Murrell recorded the deed to one acre of land. Through error the deed was mailed to Charles Rutter's mail box after recording. Because Rutter was an engineer he discovered that the legal description contained his mother's residence and was situated about 100 to 130 feet from his back door.
The surveyor who had measured the one acre of land testified that an error in the description was made by him and that the land as originally designated by Mrs. Murrell was not intended to include the home. Mr. Murrell also acknowledged the error; he claimed title to one acre but never the acre upon which the home rested, he never claimed anything more than a life estate in the home, and in fact he filed the action to reform and correct the deed.
On January 30, 1981, a fire destroyed the home. It is the insurance proceeds as a result of the fire which present the primary issue in this appeal.
We will first deal with the issue of negligence as it relates to Mr. Murrell's handling of the jewelry.
Here, the chancellor was the finder of fact and when the testimony is contradictory we cannot reverse absent a finding that he was manifestly wrong. Stone v. Campbell, 261 So.2d 127 (Miss. 1972). Upon review of the record we must agree that Mr. Murrell's storage of the jewels in his dresser drawer did not constitute negligence. We therefore affirm the chancellor's dismissal of that claim.
*439 As to the deed. Because both parties have agreed that the deed should be reformed to accurately reflect the property Mrs. Murrell intended to convey to her husband, the decision of the chancellor to so reform the deed is hereby affirmed.
The final question is whether the proceeds of the fire insurance policy are to be held in trust by Mr. Murrell and upon his death surrendered to Mrs. Murrell's son and daughter; or, declared to be solely the funds of Mr. Murrell. The chancellor held that the insurance proceeds were to be placed in a trust from which Mr. Murrell could obtain the interest, with the principal being held until his death and then distributed equally to Linda Dianne and Charles.
Our research has revealed few instances in which this Court has addressed the instant issue. In King v. King, 163 Miss. 584, 143 So. 422 (1932), Charles King brought a bill in equity against Mamie Louise King. Mamie Louise owned a life estate in certain property of which Charles was the remainderman. Mamie Louise had insured the property against fire for the sum of $10,000. After a fire destroyed the property Charles brought his bill in equity alleging that Mamie Louise, as a life tenant, was a trustee for Charles and should be required to hold the proceeds of the insurance policy and allowed to spend only her life estate interest therein. We resolved the King case by holding:
We think it is quite clear in the case at bar that the life tenant had an insurable interest and that the remainderman had an insurable interest in the same property, and in making the contract of insurance there was no duty imposed upon the life tenant to preserve the interest of the remainderman in the common property. She exercised her right to insure it, and under the valued policy of law, cited supra, she was entitled to recover the full amount thereof; it was a matter of contract between her and the insurance company. It was a matter of contract in which the remainderman here had no interest. Because he failed to exercise his right to insure his interest in the property is no reason for permitting him to claim an interest in the independent contract between the life tenant and the insurance company, nor can the courts invade it. The right of contract is a public policy in this state. We are therefore of the opinion that in the absence of a duty laid by contract or otherwise upon the life tenant to insure for the benefit of the remainderman the property in which they both have an interest, and in the absence of any agreement that the life tenant shall so do, the remainderman has no interest in the proceeds of the policy procured and paid for by the life tenant. In securing insurance it is a matter of contract between the life tenant and the insurance company, and there is no allegation that the life tenant here did anything which prevented or interfered with the remainderman's unquestioned right to insure his own interest. (Emphasis Added)
163 Miss. at 594, 595; 143 So. at 424.
Although the chancellor distinguished King by noting that at the time the instant insurance policy was purchased Mr. Murrell and his wife, Rena, were both living on the property and that Murrell's interest was not expressly limited to a life estate. While we recognize this distinction in King, we can see that it makes little difference.
"This Court is committed to the doctrine that fire insurance is an indemnity to the insured and the proceeds thereof do not run with the land." King, 163 Miss. at 595, 143 So. at 424.
The rule in this state does not differ whether the insured was originally holder of a life estate in the insured property or something more or less. Again, Rena Murrell's children could have insured their interest in the remainder of the estate had they chosen to do so. The fact that they did not does not entitle them to now become parties to Mr. Murrell's contract with the insurance company.
Based on all the foregoing, we hereby affirm as to the dismissal of the court alleging negligence against Mr. Murrell *440 and the order of the chancellor reforming the land description and the deed; further, we reverse the chancellor's holding that the insurance proceeds are to be held in trust for Linda Dianne Rutter Quin and Charles N. Rutter and order the insurance proceeds delivered to E.C. Murrell.
ON DIRECT APPEAL REVERSED AND RENDERED IN PART, AFFIRMED IN PART. ON CROSS-APPEAL AFFIRMED.
PATTERSON, C.J., WALKER and BROOM, P.JJ., and ROY NOBLE LEE, BOWLING and HAWKINS, JJ., concur.
ROBERTSON, J., concurs in part and dissents in part.
PRATHER, J., dissents.
ROBERTSON, Justice, concurring in part and dissenting in part:
I respectfully dissent from so much of the majority opinion as holds that the proceeds of the homeowners' insurance policy should be delivered in their entirety to E.C. Murrell.
The correct legal interpretation of the facts is elusive. In my view the correction of the error in the March 21, 1977 deed should relate back to that date. With this correction, I regard that, as a matter of law, from and after July 8, 1980, the date of the death of Rena Gunnell Murrell, the insured property was owned in separate estates, a life estate in E.C. Murrell and a remainder interest in his two step-children, Linda Dianne Rutter Quin and Charles N. Rutter. Prior to and after July 8, 1980, Murrell had procured homeowners' insurance on the property in question. He maintained that insurance in effect at all relevant times thereafter.
To be sure, Murrell had a separate insurable interest. We have before us, however, no evidence that he caused to be insured only that interest. As I understand the policy in question, Murrell contracted for insurance of the aggregate of insurable interests in the property. The insurance company agreed to insure all such interests, no doubt knowing nothing of the life tenancy/remaindermen status of the title.
Life tenants such as E.C. Murrell have a duty not to commit waste during the life tenancy. This duty has affirmative aspects. Without regard to whether a life tenant has an affirmative obligation to insure the property, it is inconceivable to me that, if a life tenant in the course of his management and conservation responsibilities procures insurance for the entire property, he should be allowed to receive the entire proceeds, if the property is destroyed by fire. Remaindermen not in possession may not under such circumstances reasonably be expected to insure their interests and to risk destruction of their interests if they fail to do so.
The majority makes much of King v. King, 163 Miss. 584, 143 So. 422 (1932). If Murrell had contracted unequivocally for the insurance of his life estate only, under King he would receive the insurance proceeds. But Murrell did not do this. After July 8, 1980, he maintained in effect a policy which insured all interests in the property, not just his.
To suggest that King dictates that we consider this case as a mere matter of contract between Murrell and the insurance company calls to mind the familiar distinction between law and equity. Under the law a person may contract with another in any manner the two see fit. Fuzzy moral notions of right and wrong, good and bad are irrelevant. That persons not parties to the contract may suffer loss is of no concern of the law. See Gilmore, The Death of Contract, 16-17 (1974). So long as there is a meeting of the minds, an exchange of promises and the like, the parties may do as they wish and either may enforce the contract according to its tenor. Persons potentially affected who have failed to act to protect their interests sit idle at their peril. The law is wholly indifferent to non-legal consequences. It would allow one to think and behave as the proverbial Holmesean bad man [Holmes, The Path of the Law, 10 Harv.L.Rev. 457, 459 (1897)] to his heart's content.
*441 In this context, the law says to a man that, so long as you stay within its positive (and, by definition, amoral) parameters, you can do anything you wish, that you may make or enforce any contract you desire. Equity says, you ____ ____ ____[1], you can't get away with it.
In my view the insurance proceeds in a situation such as that with which we are here concerned ought be divided among the owners of different interests in the property and pro rata to the value of the respective vested interests at the date of the loss. This the chancellor has done.[2] If, on these facts, the law requires otherwise, there is something very wrong with our law.
In all other respects, I concur in the opinion announced for the Court by Justice DAN M. LEE.
PRATHER, Justice, dissenting:
The former dissent is withdrawn and this dissent is substituted therefor.
Respectfully, I dissent from the majority opinion.
This cause involves two lawsuits which were filed in the Lincoln County Chancery Court and consolidated for trial. The first suit was filed by Linda Dianne Rutter Quin and Charles N. Rutter as individuals and co-executors of their mother's estate. In that suit they sought recovery of fire insurance proceeds from their step-father, E.C. Murrell, as constructive trustee of those proceeds and the return of their mother's jewelry bequeathed to Linda Quin or a judgment for the value of the jewelry. The second suit was brought by the decedent's husband, E.C. Murrell, wherein he sought reformation of the description of one acre of land deeded to him by his wife during her lifetime.
The chancellor held that the insurance proceeds be held in trust with Murrell receiving the benefit of any income therefrom and upon his death the principal was to pass to Dianne Quin and Charles Rutter in equal shares. The chancery court also reformed the one acre deed to correctly show the intent of the parties. He also held that there was insufficient proof to hold Murrell liable for the lost jewelry on a negligence theory. From this decree the parties both appeal. We affirm.
Murrell assigns that the court committed error in holding that the insurance funds were subject to a trust for the estate benefit. The co-executors assert that the court's finding of no negligence in the personalty's handling was error.

I.
Rena and "Jack" Murrell were married on July 18, 1970, and lived together for ten years until her death on July 8, 1980. After their marriage, Mr. Murrell built a residence for them on her real estate by converting a partially-built dairy barn and trailer into a home. During the building construction, Mr. Murrell took out a builder's risk insurance policy in his name on the home. In 1975 the original builder's risk policy was converted into a homeowner's policy with the names of "Mr. and Mrs. E.C. Murrell" as named insured. Later in 1978 the "Mr. and Mrs." was dropped because of a "computer issue" (not enough space on the computer to issue), and the policy named only "E.C. Murrell" as named insured. Mr. Murrell paid the premiums on the policy with his business checks.
During the marriage Mrs. Murrell received numerous gifts of jewelry from her husband. She gave to her husband a deed to one acre of land on March 21, 1977, for the purpose of building a workshop near their home. Two children were born to Mrs. Murrell, Linda and Charles Rutter, and Charles' home was "right in front" of the Murrell home. Murrell had a daughter by his prior marriage.
The will of Mrs. Murrell was probated after her death on July 8, 1980 which devised *442 to the husband her interest in a camp, all livestock, savings account, the lifetime use of household furniture, and a life estate in the home together with a ten acre plot from the 110 acres including the home, to be selected by him. The fee simple title to the 110 acres, subject only to the life estate of her husband, was devised to her two children. The personal effects of Mrs. Murrell, including the jewelry and fur, in dispute here, were bequeathed to her children. Other provisions are not in issue on this appeal.
After Mrs. Murrell's death, Mr. Murrell was given the jewelry, valued up to $12,000, by the funeral home director. Mr. Murrell gave to Linda Quin the ring given to her mother by Linda's father, but put the other jewelry in his home in a dresser drawer. It was from this location that the jewelry and fur were stolen shortly afterwards while Mr. Murrell was in the hospital for about a week's period of time. Nothing else was taken from the home in the break-in, and no report was made by Murrell for insurance on the items. Murrell's daughter by a prior marriage corroborated this burglary. She also testified of the loss of some of her stepmother's jewelry prior to her death.
Additionally, the 1977 deed to the one acre of land was recorded by Jack Murrell after his wife's death, and through error was mailed to Charles Rutter's mailbox after recording. Since Rutter was a civil engineer, he discovered that the legal description included his mother's residence and was situated about 100 to 130 feet from his back door.
However, the home was destroyed by fire on January 30, 1981, and the fire insurance proceeds were in dispute. These facts gave rise to the two lawsuits.

REGARDING REFORMATION SUIT

II.
Recognizing that this appeal consolidated two lawsuits at the trial level, it is more understandable to separate them for analysis of the legal questions.
In one suit E.C. Murrell sought reformation of a deed to one acre of land given to him by his wife, Rena Gunnell Murrell, in her lifetime. Mrs. Murrell wanted to give one acre of her 110 acre tract to her husband, E.C. Murrell, for a workshop. A surveyor was employed to prepare the legal description of the acre to exclude the homesite.
However, through error, the surveyor's description included, rather than excluded, the home of Mr. and Mrs. Murrell. E.C. Murrell acknowledged that Mrs. Murrell did not intend for him to have the home site, and that he did not claim it. After E.C. Murrell filed his suit to reform the deed, but before hearing, the home burned. The insurance proceeds for the home were paid into Mrs. Murrell's estate.
The chancery court, acknowledging that there was no dispute between E.C. Murrell and Mrs. Murrell's children by her first marriage, reformed the deed to conform to the intention of the grantor. Thereafter, the workshop one acre was owned in fee simple by E.C. Murrell, and the home acre was devised under the will of Rena Murrell to her husband for life and remainder to her children.
No error is assigned as to this order in Cause No. 22,836.

REGARDING THE ESTATE PROCEEDINGS

III.
The record reflects that Mrs. Murrell was the fee simple owner of the 110 acres at the time of her marriage to E.C. Murrell upon which tract was located the home. E.C. Murrell remodeled the home, and for that purpose personally bought builder's risk insurance.
Upon completion of this construction in 1975, E.C. Murrell secured a homeowner's insurance policy for the total value of the home with the named insured being "Mr. or Mrs. E.C. Murrell."
The named insured  Mr. or Mrs. E.C. Murrell  were continued on this policy as it *443 was originally purchased without instruction from anyone to change that designation until 1978. At that time, according to the insurance agent, through a "computer issue" (not enough space on the computer to issue the policy in both names), Mrs. Murrell's name was omitted and "E.C. Murrell" only became the named insured on the policy.
Undisputedly, during the lifetime of Rena Murrell, the legal title to the 110 acres, including the home, was held by Mrs. Murrell (excluding consideration of the previously discussed one acre gift). The only interest, right, or benefit in this 109 acres and home held by E.C. Murrell was his homestead right. The house insurance purchased during this period covered the full value of the house, and the premiums were paid by E.C. Murrell. Mrs. Rena Murrell died on July 8, 1980, and subsequent to her death, the house burned on January 30, 1981. The fire insurance proceeds were paid into the estate. Both E.C. Murrell and Rena Murrell's children claim entitlement to the proceeds.
E.C. Murrell claimed his right by virtue of ownership as the named insured on the policy and payment of all the premiums. His insurable interest, if any, prior to his wife's death was homestead rights only, but after Rena Murrell's death, he held a life estate by virtue of the last will and testament of his wife. If his argument is accepted, the remainderman's interest was uninsured.
On the other hand, Rena Murrell's children claim entitlement by virtue of the insuring of the entire interest in the home during the lifetime of their mother. They contend that E.C. Murrell would be in the same position regarding the insurance as he holds in the legal title, that is, a life estate only in the proceeds of insurance, with remainder of the corpus of insurance monies to the children at his death.
The chancellor in his finding of fact stated that the testimony was undisputed that E.C. Murrell did not ask to insure only a life estate. Rather, the chancellor found that E.C. Murrell "was acting for and on behalf of himself and his wife in insuring this property, ..." The chancellor concluded that the fire insurance proceeds should stand in lieu of the house, and that the insurance proceeds should be distributed in the same manner as the home. He, therefore, directed the investment of the insurance monies with interest to the widower, E.C. Murrell, for his lifetime and the corpus to the remainderman at Murrell's death.[1]

IV.
An examination of basic insurance and contract law is in order to determine to whom the insurance should be paid. An initial question is whether E.C. Murrell had an insurable interest in this property. The insurable interest principle, while usually invoked by the insurer, is helpful in resolving the conflict between E.C. Murrell and the estate. Neely v. Pigford, 181 Miss. 306, 178 So. 913 (1938).
Generally speaking, an insurance policy is a contract undertaken by an underwriter (the insurance company), in consideration of money (the premium), to indemnify the owner (the insured) of property against loss by specified perils (in this case, fire), within a prescribed period of time. Mutual L. Ins. Co. v. Allen, 138 Mass. [24], 27, 52 Am.Rep. [245] 145. The subject, right, or interest to be protected is the "insurable interest."
The insurable interest doctrine has its origin in English statutory law under the Statute of George II in 1746 and under the Statute of George III in 1774. Basically these acts prohibited the insuring of lives or events wherein the "assured shall have no interest." Early American courts followed the English precedents initially, in the absence of legislation, until such time as statutes were enacted.
The basic principle for the development of the "insurable interest doctrine" was *444 that there was too much "risk associated with opportunities for net gain from receiving insurance proceeds ... for the benefit of persons who have [no] interest in the subject matter of the insurance... ." Robert R. Keeton, Insurance Law, § 3.3 (1971).
Basic principles of insurance law also recognize that an insured must have an interest of some kind in the subject matter of the insurance for the policy to be valid and enforceable. 44 C.J.S., Insurance § 175 (1945). Likewise, an insurable interest is not dependent upon payment of the premium. Western & Southern Life Ins. Co. v. Webster, 189 S.W. 429, 172 Ky. 444, L.R.A. 1917 B 375, Am.Cas. 1917C 271; 44 C.J.S. Insurance § 175 (1945). The payment of a premium could just as reasonably have been interpreted to be a gift to his wife.
This Court has accepted the definition that one owns an insurable interest in property if he derives a benefit from its existence or would suffer loss from its destruction. Southeastern Fidelity Insurance Co., et al. v. Gann, 340 So.2d 429 (Miss. 1976).
Persons in particular capacities, such as bailees, executors or administrators, lessors, lessees, remaindermen have been recognized as holding an insurable interest without legal title. Gann, supra; Fry v. Jordan Auto Co., 224 Miss. 445, 80 So.2d 53 (1955); King v. King, 163 Miss. 584, 143 So. 422 (1932); 44 C.J.S. Insurance § 175 (1945). Therefore, we conclude that a homestead right as held by E.C. Murrell would constitute such a possessory interest or advantage as to qualify as an insurable interest. Western Fire Insurance Co. v. Sanchez, 671 S.W.2d 666 (Tex. Ct. App. 1984); In Re National Security Fire & Casualty Co. v. Minchew, 372 So.2d 327 (Ala. 1979). Therefore, E.C. Murrell owned an insurable interest in the property at the time of inception of the policy.
However, case law has recognized in fire insurance cases that an insured must not only have an insurable interest at the time of inception of the policy, but also at the time of loss claimed under the policy. This case factually meets that test for at the time of the occurrence of the loss by fire, E.C. Murrell's interest had increased to that of life tenant.

V.
Having determined that E.C. Murrell had an insurable interest, we next address whether he was entitled to all or only a portion of the policy proceeds.
Insurance law is based on the principle of indemnification and is aimed at reimbursement. The benefit derived from insurance should be no greater in value than the loss. Doss v. Roberts, 487 S.W.2d 839 (Tex.Civ. App. 1972); R. Keeton, Insurance Law § 3.1 (1971).
At the time of inception of this policy in 1975, E.C. Murrell insured the home to its maximum value,[2] and in excess of his interest. He had no insurable interest in the total value of the home at either the inception of policy or at the time of loss and could not have been seeking indemnification for the home's total value. He could, however, suffer economic loss from the fire to the extent of his interest. Doss, supra.
The chancellor in effect found E.C. Murrell became a trustee of the fire insurance policy at the time of its inception for benefit of himself and his wife. The policy, not the real estate, was the subject of the trust. The policy written in 1975 continued in force after the death of the fee owner and until the residence burned, and it was subject to the same trust as prior to Mrs. Murrell's death.
After creation of the life and remainder estates, both interests were insurable interests and could by contract have been insured separately in proportion to their values. King v. King, 163 Miss. 584, 143 So. 422 (1932). But this policy was initiated *445 prior to the creation of the life/remainder estates.
Therefore, the answer as to the division of these proceeds of fire insurance under these circumstances is found in 21 C.J. Estates § 92 (1920).
If a building is already insured prior to the creation of the life estate and is afterward totally destroyed, the property is in effect converted into personalty and the tenant for life is entitled to the income of the insurance money for his life and the reversioner to the principal after the tenants death.... Citing Graham v. Roberts, 43 N.C. 99; Haxall v. Shippen, 10 Leigh (37 Va.) 536, 34 Am.D. 745.
The chancellor's action applied this division and properly so.
The appellant relies upon King, supra. King, as the actual record in that case reflects, is a factually distinguishable case. The decedent, C. Richard King, died in 1919 and under his will left his widow, Mamie Louise King, a life estate in their home with remainder to children. In 1930, Mrs. King procured fire insurance for her indemnification, and she paid for it personally. Further, this Court held that an insurance policy is a matter of contract between the parties to the contract; both life tenant and the remainderman have insurable interests. But, in the case sub judice the chancellor found the policy was purchased for the benefit of both husband and wife.
The chancellor was the finder of fact, and when the testimony is uncontradicted we cannot reverse absent a finding that he was manifestly wrong. Stone v. Campbell, 261 So.2d 127 (Miss. 1972).
I would affirm the chancellor's conclusion that the insurance policy was subject to a constructive trust. The arrangement for division of the proceeds between life tenant and remainderman was proper.

VI.
With respect to the issue of negligence as it relates to Mr. Murrell's handling of the jewelry, there is no manifest error in the chancellor's finding, as factfinder, on this issue. Stone, supra. Mr. Murrell's storage of the jewels in his dresser drawer did not constitute negligence. I would, therefore, affirm the chancellor's dismissal of that claim.
I would grant the petition for rehearing and affirm the trial court's decision.
SULLIVAN, J., joins in this dissent when presented on the petition for rehearing, in the place of BROOM, P.J., who has retired from the Court.
NOTES
[1] Supply here an earthy metaphor for Holmesean bad man.
[2] I agree with Justice Prather that impression of a constructive trust upon the insurance proceeds is the correct means of securing and enforcing the remaindermen's equitable rights.
[1] Mr. Murrell testified that he did not desire to use the insurance proceeds to rebuild the home next to his stepson because of his remarriage. The chancellor respected this desire.
[2] MCA § 83-13-5 (1972), Amount of insurance.

No insurance company shall knowingly issue any fire insurance policy upon property within this state for an amount which, together with any existing insurance thereon, exceeds a fair value of the property... .