**AETNA CASUALTY & SURETY COMPANY, Plaintiff,**

v.

**Sharon DAVIDSON, Defendant.**

**Civ. A. No. J88–0545(L).**

United States District Court,
S.D. Mississippi,
Jackson Division.

April 28, 1989.

Ben L. Riddick, David A. Barfield and Wes W. Peters, Satterfield & Allred, Jackson, Miss., for plaintiff.

John Gordon Roach, Jr., Roach & McMillan, McComb, Miss., for defendant.

### MEMORANDUM OPINION AND ORDER

TOM S. LEE, District Judge.

This diversity action was brought by Aetna Casualty & Surety Company (Aetna) seeking a declaratory judgment to the effect that defendant Sharon Davidson has no valid claims arising under a certain automobile insurance policy. Presently before the court is plaintiff's motion for sum-

mary judgment. Defendant has responded to the motion, and the court has considered the memoranda with attachments submitted by the parties in ruling on the motion.

The material facts of this case are not in dispute. In September 1987 Davidson procured from Aetna an automobile insurance policy covering a 1987 Ford truck and a 1978 Cadillac DeVille. The policy listed Davidson as the named insured and Crown Zellerbach, a business located in St. Francisville, Louisiana, as the loss payee. Legal title to the Ford truck, however, was held not by Davidson but by Allen Eugene Walker. Apparently Davidson was the principal driver of the truck and subsequently paid for maintenance work on it. Aetna's local agent, John Henry Insurance Agency in Zachary, Louisiana, with which defendant had dealt for several years, never inquired as to the status of the title of the truck, and Davidson in turn never informed the agency. She did state that she would be the principal driver of the vehicle. Subsequently, Aetna paid to Davidson a claim for damage on the truck.

In March 1988 defendant contacted one of the agents at the John Henry Insurance Agency by phone and asked him to remove the Ford Ranger from the policy and to add a 1988 Chrysler, the automobile at issue in this case. She told the agent that Walker had purchased the car "for [her] use and benefit and as a gift." She also stated that she would be the principal driver and was so designated on the policy that was issued. The agent asked if Crown Zellerbach held a note against the car, to which she responded in the affirmative, but he did not inquire as to the status of the legal title to the automobile. In August of 1988 the Chrysler was destroyed while being driven by Walker, who was killed in the accident. After competing claims were made on the policy,[1] plaintiff investigated and discovered that legal title to the Chrysler was in the name of Walker, rather than Davidson. Based on this discovery, Aetna refused and continues to refuse to pay the claim.

Mississippi follows the general rule that in order to be entitled to proceeds from an insurance policy, the purchaser of the policy must have an insurable interest in the property or life insured.[2] *See, e.g., Southeastern Fidelity Ins. Co. v. Gann,* 340 So.2d 429 (Miss.1976); *National Life & Accident Ins. Co. v. Ball,* 157 Miss. 163, 127 So. 268 (1930); *see also* Am.Jur.2d *Automobile Insurance* § 41 (1980). Aetna states, and Davidson does not dispute, that Davidson did not have an insurable interest in the automobile.[3] Defendant claims,

---

1. In addition to Davidson, Walker's estate sought recovery under the policy.

2. Defendant suggests that Louisiana law, rather than Mississippi law, may be applicable to some of the issues in this case. When defendant purchased the policy she was a Louisiana resident, and the contract was executed in that state. Presently, however, defendant is a Mississippi resident. It is unclear when she moved from Louisiana to Mississippi. The car was purchased in Mississippi and bore a Mississippi license plate, and the title of ownership was issued in Mississippi. The accident occurred in Mississippi. However, there is no reason for the court to resolve the question of which state's law applies, because Louisiana law is in substantial agreement with Mississippi on the relevant legal issues. Because there is no conflict, this court will apply Mississippi law, citing also to Louisiana law where helpful. *See Verlan, Ltd. v. John L. Armitage Co.,* 695 F.Supp. 950, 952 (N.D.Ill.1988) (citing *International Adm'rs, Inc. v. Life Ins. Co. of North America,* 753 F.2d 1373, 1376–77 (7th Cir.1985)); *Seven–Up Bottling Co. (Bangkok), Ltd. v. PepsiCo, Inc.,* 686 F.Supp. 1015, 1022 (S.D.N.Y.1988) (citing *Walter E. Heller & Co. v. Video Innovations, Inc.,* 730 F.2d 50, 53 (2d Cir.1984)).

3. It is true that an insurable interest may be an interest less than that required for legal title. For example, in *Southeastern Fidelity Ins. Co. v. Gann,* 340 So.2d 429, 433 (Miss.1976), the Mississippi Supreme Court found that the insured had an insurable interest in certain buildings because, at the time the policies were issued, he would have been subject to economic loss had the buildings been destroyed. Similarly, in *State Farm Mutual Auto. Ins. Co. v. Price,* 378 So.2d 599 (La.1979), the insured was the good faith purchaser of a stolen automobile. The Louisiana court found that he nevertheless had an insurable interest because of his interest in preserving his economic investment. In contrast, in the present case defendant had no economic investment in the automobile. At any time Walker could have taken it from her. When the Chrysler was destroyed, defendant lost nothing other than the use of a car which was not hers to begin with.

however, that Aetna by its conduct has waived this defense to the claim and is estopped from asserting it.

The rule requiring an insurable interest is based on the public policy that one should not be permitted to wager on or have a direct interest in the loss of life or property of another. *Ball*, 157 Miss. at 163, 127 So. at 268. In the words of the Mississippi Supreme Court, such insurance policies "have a tendency to create a desire for the event." *Id.* Because of the public policy involved in such cases, the Mississippi court has held that the doctrines of waiver and estoppel may not be used to enforce such contracts. *Id.* In *Ball*, a son-in-law had purchased an insurance policy on the life of his father-in-law. The court rejected the son-in-law's argument that, since the insurer knew that he had no insurable interest but nevertheless collected the premiums and issued the policy, he should be allowed to collect on the policy:

> Appellee contends however that the insurer knew of the particular relation and of the want of insurable interest; and that the insurer, having nevertheless continued to collect the premiums from appellee, is now estopped to raise the point. If it were a matter wherein only the parties to the litigation were concerned, the argument of appellee would be unanswerable; but when a contract is in contravention of public policy, is contrary to the public good, the individual interests of the immediate parties are subordinated to the superior concern of the public in general, so that, so long as the condemnatory vice remains in it, there is nothing that the particular parties to the contract may do which will make it otherwise than it was ab initio—void as against public policy, and therefore nonenforceable by the courts.

*Id.; see also Employers Fire Ins. Co. v. Speed*, 242 Miss. 341, 133 So.2d 627 (1961).[4]

Furthermore, even assuming that the law would acknowledge this argument, defendant could not prevail in this case, as she has produced insufficient evidence to raise a genuine issue as to whether plaintiff knew or had reason to know, before the accident, that she did not have legal title to the Chrysler.[5] Defendant's evidence points to the fact that plaintiff had previously paid a claim of hers on the Ford truck, a vehicle to which she did not have legal title. However, nothing indicates that Aetna knew or had any reason to know at the time that legal title to the vehicle was held by someone other than defendant. Also, the fact that defendant told the insurance agency that she received the Chrysler as a gift is in no way inconsistent with the agency's assumption that title had been or would be transferred to her. Quite the contrary, implicit in the word "gift" is the idea that defendant had become the owner of the Chrysler.[6]

Accordingly, because there is no genuine issue of material fact, plaintiff is entitled to summary judgment as a matter of law. A separate judgment will be entered in accordance with Federal Rule of Civil Procedure 58.

**4.** Louisiana law is in agreement. In *Rube v. Pacific Ins. Co. of New York*, 131 So.2d 240 (La.1961), the plaintiff informed the insurance company that she did not hold legal title to the automobile to be insured. The agency nevertheless suggested that the insurance be in her name, since the true owner, plaintiff's brother, could not obtain the insurance because he was a member of the armed services. The Louisiana court held that because the enforcement of the contract would be against public policy, the doctrines of waiver and estoppel could not apply.

**5.** Defendant's evidence shows that after the accident, she informed a claims adjuster for plaintiff that she did not have legal title, and that the adjuster nevertheless assured her that the claim would be paid. This fact is irrelevant, however, as defendant has failed to show how she could have relied on this assurance after-the-fact.

**6.** In her affidavit, defendant states that the local agent knew she was not employed by Crown Zellerbach, the named loss payee on the policy, and therefore should have realized that she could not have owned a car financed through the Crown Zellerbach employees' credit union. Without more, defendant's conclusory statement is not evidence of such knowledge.