TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-96-00491-CV







State Farm Mutual Automobile Insurance Company, Appellant



v.



Joel Kelly, Appellee







FROM THE COUNTY COURT AT LAW NO. 1 OF TRAVIS COUNTY


NO. 228,095, HONORABLE J. DAVID PHILLIPS, JUDGE PRESIDING







 The issue presented is whether the confiscation of a stolen vehicle by state authorities is an
"accidental loss" under the insurance policy issued by State Farm Mutual Automobile Insurance Company,
appellant, to Joel Kelly, appellee. After a bench trial on stipulated facts, the trial court rendered judgment
in favor of Mr. Kelly. State Farm appeals, contending the trial court erred because: (1) Kelly's vehicle was
not a "covered auto" under the insurance policy; (2) confiscation of the vehicle was not an "accidental loss";
and (3) coverage of this loss would violate public policy. Additionally, State Farm argues the trial court
erred in construing the policy in favor of coverage when the policy was not ambiguous. We will affirm the
trial court's judgment.


BACKGROUND

 In October 1993, in response to a newspaper advertisement, Mr. Kelly paid $17,000 to
Darrell Edmond Rogers, a/k/a Donald Davis, to purchase a vehicle that Rogers claimed to be a 1991
Nissan 300ZX. Mr. Kelly received a certificate of title to a 1991 Nissan 300ZX. On the same day, Mr.
Kelly called and asked State Farm to replace the 1990 Mazda on his personal auto insurance policy with
the 1991 Nissan. Less than a month later a Department of Public Safety officer visited Mr. Kelly at his
place of business and confiscated the 1991 Nissan, informing him that the car was a stolen vehicle. The
"VIN" plates of a reconditioned 1991 Nissan 300ZX had been placed on a 1993 model which had been
stolen from a Houston car dealership. Mr. Kelly immediately called State Farm, canceled coverage on the
1991 Nissan and reinstated coverage on the 1990 Mazda.

 On February 11, 1994, a Travis County justice of the peace ordered the confiscated 1993
Nissan returned to its rightful owner. Mr. Kelly filed a claim with State Farm under the policy provision,
"Coverage for Damage to Your Auto," for the $17,000 he paid for the stolen vehicle. State Farm denied
the claim. Mr. Kelly subsequently sued State Farm for the loss. The trial court rendered final judgment
in favor of Mr. Kelly and ordered State Farm to reimburse him for the amount paid for the car, plus interest
and attorneys' fees. The court made several conclusions of law, including the following: (1) Mr. Kelly's
auto insurance policy with State Farm is not ambiguous; (2) Mr. Kelly was a bona fide purchaser of a
stolen car; (3) seizure of the car by the police was an accidental loss to Mr. Kelly; (4) the policy did not
exclude this type of accidental loss from coverage; and (5) the policy covers all accidental losses not
specifically excluded. State Farm appeals the judgment.

DISCUSSION

 Under Mr. Kelly's insurance policy, State Farm agrees to "pay for direct and accidental
loss" to the insured's "covered auto." The policy defines covered auto to include a private passenger
automobile acquired during the policy period if the insured notifies State Farm within 30 days after
becoming the owner. To be covered, therefore, Mr. Kelly's Nissan must have been a "covered auto"
and its repossession must have been an "accidental loss" not specifically excluded by the policy. In its first
two points of error, State Farm claims the trial court erred in concluding the car was a covered auto and 
the confiscation was an accidental loss under the policy. Whether the car was a covered auto and the
confiscation was an accidental loss under the terms of policy are questions of law. We review a trial
court's conclusions of law de novo. See State Farm Lloyds v. Kessler, 932 S.W.2d 732, 735 (Tex.
App.--Fort Worth 1996, no writ h.); Piazza v. City of Granger, 909 S.W.2d 529, 532 (Tex.
App.--Austin 1995, no writ).


"Covered auto"

 State Farm asserts that its policy definition of "covered auto" specifically imposes an
ownership requirement for coverage. Because Mr. Kelly never received a legal certificate of title to his
car, State Farm contends he was never an owner and his car was never a covered auto under the policy.

 It is well settled in Texas that an insured need only have an insurable interest in property
for coverage to take effect; actual ownership is not required. See Smith v. Eagle Star Ins. Co., 370
S.W.2d 448 (Tex. 1963); Gulf Ins. Co. v. Winn, 545 S.W.2d 526, 527 (Tex. Civ. App.--San Antonio
1976, writ ref'd n.r.e.). In Smith, the plaintiff purchased fire insurance on a dwelling that she thought she
and her husband owned but which turned out to be owned by the state. Smith, 370 S.W.2d at 449. The
supreme court held that the plaintiff was entitled to the insurance proceeds when the house burned down
because she held an insurable interest in the property. Id. at 450. An insurable interest exists when the
insured derives pecuniary benefit or advantage from the preservation and continued existence of the
property or would sustain pecuniary loss from its destruction. Id. (citing Canfield v. Newman, 265 S.W.
1052 (Tex. Civ. App. --El Paso 1924, no writ)). The plaintiff in Smith had an insurable interest by virtue
of her having lived on and farmed the land in question for several years. Several courts in Texas have
followed Smith in not requiring ownership to establish an insurable interest. See Jones v. Texas Pac.
Indem. Co., 853 S.W.2d 791, 794 (Tex. App.--Dallas 1993, no writ) (not owning property does not
preclude an insurable interest in such property); Thompson v. Trinity Univ. Ins. Co., 708 S.W.2d 45,
47 (Tex. App.--Tyler 1986, writ ref'd n.r.e.) (it is not necessary to prove title to show insurable interest);
First Preferred Ins. Co. v. Bell, 587 S.W.2d 798, 801 (Tex. Civ. App.--Amarillo 1979, writ ref'd
n.r.e.). 

 The purpose of the insurable interest requirement is to discourage the use of insurance for
illegitimate purposes. See Bell, 587 S.W.2d at 802 (citing 44 C.J.S. Insurance § 179 (1945)). That
purpose is served here. The record before us contains no allegations that Mr. Kelly knew or should have
known that the vehicle he purchased was stolen. He paid valuable consideration for the car and would
have derived a benefit from its continued use; he suffered a substantial pecuniary loss when the car was
confiscated. As a good faith purchaser for value, Mr. Kelly had an insurable interest in the Nissan as matter
of law, even though he was never the legal owner. (1) Because he notified State Farm within the thirty-day
period required by the policy, the trial court correctly concluded the Nissan was covered under Mr. Kelly's
policy. We overrule State Farm's first point of error.


"Accidental loss"

 Under the policy, State Farm is required to "pay for direct and accidental loss" to a
covered auto. Whether confiscation of a stolen car from a bona fide purchaser is an accidental loss is an
issue of first impression in Texas. To address the issue we look to Texas cases defining other types of
accidental loss and to other jurisdictions which have directly addressed this issue.

 The Texas Supreme Court has recognized that a loss or injury is accidental when it is "not
the natural and probable consequence of the means which produce it." State Farm Fire & Cas. Co. v.
S.S. & G.W., 858 S.W.2d 374, 377 (Tex. 1993) (quoting Republic Nat'l Life Ins. Co. v. Heyward, 536
S.W.2d 549, 555-56 (Tex. 1976)). In other words, accidental loss is one that does not ordinarily follow
and cannot be reasonably anticipated from the producing act. See id.; Southern Farm Bureau Cas.
Ins. Co. v. Brock, 659 S.W.2d 165, 166 (Tex. App.--Amarillo 1983, writ ref'd n.r.e.) (emphasis added). 
An accidental loss is one the actor did not intend to produce. See S.S. & G.W., 858 S.W.2d at 377;
Argonaut S.W. Ins. Co. v. Maupin, 500 S.W.2d 633, 635 (Tex. 1973). 

 Texas courts have applied this definition in a number of instances involving insurance
coverage. In Brock, the insured was denied coverage for loss to his truck when he intentionally collided
with another vehicle in order to prevent a shooting. See Brock, 659 S.W.2d at 166. The court of appeals
found the damage to his truck was a natural and probable consequence of intentionally driving straight into
another vehicle without applying the brakes. Id. In Argonaut Southwest Insurance Co., the supreme
court ruled that the insurance company was not liable for damages under its policy insuring against loss to
property "caused by accident" when the insureds deliberately removed materials belonging to a tenant
rather than the actual owner. Argonaut S.W. Ins. Co., 500 S.W.2d at 636. The supreme court held the
loss could not be accidental when the insureds "did what they intended to do by removing the borrow
material from the property." Id. at 635. The insured's error or mistake did not make the loss accidental
because the loss was the natural result of the act of removing the materials. See id. More recently in
S.S. & G.W., the insured sought coverage under the accidental loss provision of his homeowner's policy
when he unknowingly transmitted herpes to a sexual partner. S.S. & G.W., 858 S.W.2d at 376. The
supreme court distinguished Argonaut Southwest Insurance Co., holding that the insured could not
reasonably anticipate his act would infect his partner because such is not a "natural result" of engaging in
sexual intercourse when no signs of the disease are apparent. Id. at 377 n.2. Although the act itself may
have been intentional, the resulting loss was not one that ordinarily follows from engaging in sexual activity. 
Id. 

 In defining accidental loss, courts have focused on whether the act that caused the loss was
intentional and whether the loss was a natural and probable consequence of that producing act. In
Argonaut Southwest Insurance Co., the act of removing material from a tract of land was intentional and
such removal, whether or not authorized, would reasonably result in actual loss to someone. Likewise in
Brock, the intentional act of ramming one vehicle into another would naturally result in damage. But, in S.S.
& G.W., the intentional act of engaging in sexual intercourse would not naturally and probably result in
transmitting a disease. Courts thus have examined the link between the act and its probable consequence. 

 In this case, State Farm contends that confiscation is a natural and probable consequence
of purchasing a stolen car and therefore cannot be considered an accidental loss. We believe that,
although this is a correct statement, appellant has mischaracterized the issue. Absent allegations of
knowledge that the car was stolen or collusion on the part of the insured, the producing act that must be
analyzed is the good faith purchase of an automobile by an unsuspecting buyer. We hold that confiscation
is not the natural and probable result of the good faith purchase of an automobile and under certain facts
may be an accidental loss. The present situation is more analogous to S.S. & G.W., where the loss could
not be reasonably anticipated absent any signs of the infection. Confiscation following the innocent
purchase of a vehicle where there were no signs of its being stolen is not a natural or probable consequence
of acquiring the vehicle. Such a loss is unexpected, unanticipated, and unintentional. Under this reasoning,
Mr. Kelly's loss was accidental because he purchased the vehicle without knowledge of the claims of the
unknown rightful owner. 

 Other jurisdictions are divided on the issue of whether confiscation of a stolen car is an
accidental loss under a comprehensive insurance policy. The Arizona Supreme Court held that
repossession of a stolen car from a bona fide purchaser constituted an accidental loss within the meaning
of the insurance policy. Butler v. Farmers Ins. Co. of Arizona, 616 P.2d 46 (Ariz. 1980). Declining to
comprehensively define "accidental," the court instead looked to whether the repossession was
unanticipated or unintentional. See id. at 48. In holding that such a loss was covered because it was neither
foreseeable nor deliberate, the court went on to state that the insurer was not prejudiced because it could
always specifically exclude liability for a risk it does not wish to insure. See id. In Kast v. Citizens Mutual
Ins. Co., 336 N.W.2d 18 (Mich. Ct. App. 1983), the court interpreted a comprehensive insurance policy
to include every loss except those explicitly excluded. As in this case, the plaintiff was a bona fide
purchaser of a stolen car who had received a title and listed the car under his policy. See id. Because the
insurer had a duty to clearly express coverage limitations in the policy, the court found the language of the
policy implied that coverage would be granted in every case of damage to, or loss of, the vehicle except
by collision, which was the only explicit exclusion. See id. at 19; see also Blaylock v. Country Mutual
Ins. Co., 407 N.E.2d 849, 852 (Ill. App. Ct. 1980) (anyone purchasing comprehensive coverage would
be justified in a belief that any loss except those excluded would be covered) (citing Reznick v. Home Ins.
Co., 360 N.E.2d 461, 464 (Ill. App. Ct. 1977)). 

 On the other hand, a New Jersey court found that a bona fide purchaser of a stolen vehicle
was not entitled to recover under a comprehensive loss policy. Cueto v. Allstate Ins. Co., 544 A.2d 906
(N.J. Super. Ct. Law Div. 1987). The court found that although the policy secured protection for any loss,
regardless of fault, the insured could not reasonably expect that the policy would insure the legal sufficiency
of the purchase because the policy required a specific assertion of ownership, on which the insurer relied. 
See id. at 908. The court also found the loss had occurred at the time the insured acquired the bad title,
i.e., at the time of purchase, a period not covered by the policy. We decline to follow this rationale because
of the longstanding Texas precedent that ownership is not required for an insurable interest in this state. 
Additionally, Texas courts have held that property loss occurs when the injury or damage is manifested. 
See Cullen/Frost Bank v. Commonwealth Lloyd's, 852 S.W.2d 252, 258 (Tex. App.--Dallas 1993,
writ denied). Mr. Kelly's loss only became evident at the time his car was confiscated, not when he
received bad title. 

 Under Texas law, the definition of accidental loss is much like the Arizona definition that
dictated coverage for the repossession of a stolen car. An accidental loss occurs when it is not the natural
and probable consequence of the act which produces it, or does not ordinarily follow and cannot be
reasonably anticipated from the act. See S.S. & G.W., 858 S.W.2d at 377; Brock, 659 S.W.2d at 166. 
As in Butler, the confiscation of the Nissan purchased by Mr. Kelly was not the natural and probable
consequence of his unsuspecting and innocent purchase of an automobile. Although his act of purchasing
the car was intentional, the loss resulting from that act was unexpected, unanticipated, and unintentional. 
In light of Texas law governing accidental loss and the more persuasive decisions from jurisdictions finding
repossession to be accidental, we hold that the confiscation of a stolen vehicle purchased in good faith by
an unsuspecting buyer is an accidental loss subject to comprehensive coverage. 

 State Farm contends that holding it liable for loss due to confiscation effectively converts
its comprehensive policy into title insurance. But where State Farm has not excluded loss due to defective
title from its comprehensive coverage, and under Texas law actual ownership is not required for coverage,
one purchasing comprehensive insurance may reasonably expect to obtain coverage for such a loss. The
very purpose of accidental insurance is to "provide indemnity against fortuitous, unexpected or undesigned
injury." See S.S. & G.W., 858 S.W.2d at 377. As a general rule, an insurer guarantees coverage for
losses not specifically excluded by the policy. See Lloyd's of London v. Walker, 716 S.W.2d 99, 105
(Tex. App.--Dallas 1986, writ ref'd n.r.e.); Jones v. American Economy Ins. Co., 672 S.W.2d 879,
880 (Tex. App.--Dallas 1984, no writ); see also Clements v. Stewart Title Guar. Co., 537 S.W.2d
126, 128 (Tex. Civ. App.--Austin 1976, writ ref'd n.r.e.). State Farm could have, and may in the future,
specifically exclude loss from defective title. Indeed, in the policy at issue State Farm has excluded eleven
other categories of risks, including loss due to seizure of the covered vehicle by law officers where the
insured is convicted under the Texas Controlled Substances Act. State Farm could easily exclude loss due
to repossession by an unknown rightful owner, or charge an additional premium for this protection. We
decline to write in an exclusion where the policy has none. See Walker, 716 S.W.2d at 105; Jones, 672
S.W.2d at 880. On this record, the confiscation of the Nissan purchased by Mr. Kelly was an accidental
loss under the terms of his policy. We overrule State Farm's second point of error. 


Coverage Does Not Violate Public Policy

 In its third point of error, State Farm claims that mandating coverage in this case violates
public policy because it forces State Farm to insure against a loss that has already occurred. State Farm
bases this argument on its assertion that the receipt of bad title constituted the loss. As we have stated, in
Texas the loss occurs when the injury or damage to the property is manifested. See Cullen/Frost Bank,
852 S.W.2d at 258. Mr. Kelly's insurance became effective as soon as he notified State Farm to insure
the vehicle and he had an insurable interest in the vehicle. The loss was the confiscation, not the purchase
of bad title. Alternatively, State Farm claims the confiscation was not a risk the parties intended to insure. 
Under a comprehensive policy an insured secures insurance for unexpected losses; allowing State Farm
to deny liability for risks it did not expect but failed to exclude would eviscerate the nature of
comprehensive coverage. As noted, in the future State Farm is free to specifically exclude this type of
liability. We overrule State Farm's third point of error.


Policy Not Ambiguous

 In its fourth point of error, State Farm argues the trial court erred in construing the policy
in favor of coverage when the policy was not ambiguous. The trial court specifically concluded that Mr.
Kelly's auto insurance policy with State Farm was not ambiguous. Thus the court did not rely on the rule
of ambiguity to favor the insured. Rather, the court interpreted the unambiguous policy to mandate
coverage for Mr. Kelly's loss under the terms of the insurance policy. We overrule State Farm's fourth
point of error.


CONCLUSION

 Under the terms of the insurance policy Mr. Kelly's auto was a "covered auto" and the
confiscation was an "accidental loss." We hold that because this type of loss was not excluded in the
policy, Mr. Kelly was entitled to insurance coverage for the confiscation under the comprehensive provision
of the policy. Finding no error, we affirm the trial court's judgment.



 

 Bea Ann Smith, Justice

Before Chief Justice Carroll, Justices Aboussie and B. A. Smith

Affirmed

Filed: May 22, 1997

Publish

1. State Farm argues that Mr. Kelly never acquired ownership of the vehicle because the sale was made
in violation of the Certificate of Title Act. Because we find title is not necessary to coverage under the
policy, we do not address this argument. 


 ref'd n.r.e.); Jones v. American Economy Ins. Co., 672 S.W.2d 879,
880 (Tex. App.--Dallas 1984, no writ); see also Clements v. Stewart Title Guar. Co., 537 S.W.2d
126, 128 (Tex. Civ. App.--Austin 1976, writ ref'd n.r.e.). State Farm could have, and may in the future,
specifically exclude loss from defective title. Indeed, in the policy at issue State Farm has excluded eleven
other categories of risks, including loss due to seizure of the covered vehicle by law officers where the
insured is convicted under the Texas Controlled Substances Act. State Farm could easily exclude loss due
to repossession by an unknown rightful owner, or charge an additional premium for this protection. We
decline to write in an exclusion where the policy has none. See Walker, 716 S.W.2d at 105; Jones, 672
S.W.2d at 880. On this record, the confiscation of the Nissan purchased by Mr. Kelly was an accidental
loss under the terms of his policy. We overrule State Farm's second point of error. 


Coverage Does Not Violate Public Policy

 In its third point of error, State Farm claims that mandating coverage in this case violates
public policy because it forces State Farm to insure against a loss that has already occurred. State Farm
bases this argument on its assertion that the receipt of bad title constituted the loss. As we have stated, in
Texas the loss occurs when the injury or damage to the property is manifested. See Cullen/Frost Bank,
852 S.W.2d at 258. Mr. Kelly's insurance became effective as soon as he notified State Farm to insure
the vehicle and he had an insurable interest in the vehicle. The loss was the confiscation, not the purchase
of bad title. Alternatively, State Farm claims the confiscation was not a risk the parties intended to insure. 
Under a comprehensive policy an insured secures insurance for unexpected losses; allowing State Farm
to deny liability for risks it did not expect but failed to exclude would eviscerate the nature of
comprehensive coverage. As noted, in the future State Farm is free to specifically exclude this type of
liability. We overrule State Farm's third point of error.


Policy Not Ambiguous

 In its fourth point of error, State Farm argues the trial court erred in construing the policy
in favor of coverage when the policy was not ambiguous. The trial court specifically concluded that Mr.
Kelly's auto insurance policy with State Farm was not ambiguous. Thus the court did not rely on the rule
of ambiguity to favor the insured. Rather, the court interpreted the unambiguous policy to mandate
coverage for Mr. Kelly's loss under the terms of the insurance policy. We overrule State Farm's fourth
point of error.


CONCLUSION

 Under the terms of the insurance policy Mr. Kelly's auto was a "covered auto" and the
confiscation was an "accidental loss." We hold that because this type of loss was not excluded in the
policy, Mr. Kelly was entitled to insurance coverage for the confiscation under the comprehensive provision
of the policy. Finding no error, we affirm the trial court's judgment.



 

 Bea Ann Smith, Justice

Before Chief Justice Carroll, Justices Aboussie and B. A. Smith