Hector VALDEZ, Appellant,

v.

**COLONIAL COUNTY MUTUAL INSURANCE COMPANY,**
Appellee.

No. 03–97–00719–CV.

Court of Appeals of Texas,
Austin.

June 17, 1999.

Richard E. Zayas, The Law Firm of Zayas & Zamora, P.C., Brownsville, for Appellant.

Richard H. Grafton, Brown McCarroll & Oaks Hartline, L.L.P., Austin, for Appellee.

Before Chief Justice ABOUSSIE, Justices KIDD and PATTERSON.

MACK KIDD, Justice.

Colonial County Mutual Insurance Company ("Colonial") sued Hector Valdez seeking a declaratory judgment that Colonial had no insurance-coverage obligations under an automobile insurance policy issued to Valdez. The trial court granted summary judgment in favor of Colonial. By three points of error, Valdez contends that the trial court erred because: (1) the automobile insurance policy in question covered the vehicle listed on the Declarations page of the policy; (2) Valdez had an insurable interest in the vehicle; and (3) the policy was ambiguous. We will reverse the order granting summary judgment and remand the cause to the trial court for further proceedings.

## THE CONTROVERSY

On November 9, 1994, Valdez purchased insurance through Diego Luna, his local insurance agent. Luna placed Valdez with Colonial, who issued to Valdez a standard Texas automobile insurance policy to insure his 1992 Plymouth Acclaim. Shortly after Christmas of that same year, Valdez sold and transferred title of the vehicle to his adult son, Rene. Rene, with cosigner Liliana De La Garza, obtained new financing for the vehicle from Mercantile Bank. On December 29, 1994, Valdez notified Colonial that Mercantile Bank was the new lienholder. Valdez did not report the change in title to Colonial, but Colonial's Change in Policy Request form did not request such information.

At the time he purchased the car, Rene worked in Mexico City. Because he could not take the car into Mexico, Rene left the vehicle with Valdez at Valdez's residence. Valdez continued to use the vehicle and pay the policy premiums. He renewed the policy from November 9, 1995 through November 9, 1996. On January 14, 1996, more than a year after Rene bought the car, the vehicle was stolen while parked outside Valdez's residence. Valdez filed a claim with Colonial. Despite accepting Valdez's premium payments for over a year after the reported change in lienhold-

er, Colonial refused to honor the claim [1] and filed suit seeking a declaratory judgment that Valdez did not have an insurable interest in the stolen vehicle.

## DISCUSSION AND HOLDINGS

In his first point of error, Valdez contends that the trial court erred in granting summary judgment to Colonial because the automobile insurance policy in question covered the loss of the 1992 Acclaim. The relevant portions of the insurance policy issued to Valdez by Colonial are as follows:

**DEFINITIONS**

A. Throughout this policy, "you" and "your" refer to:

1. The "named insured" shown in the Declarations;

* * *

G. **"Your covered auto"** means:

1. Any vehicle shown in the Declarations;

* * *

**PART D —COVERAGE FOR DAMAGE TO YOUR AUTO**

A. We will pay for direct and accidental loss to **your covered auto,** including its equipment less any applicable deductible shown in the Declarations.

(Emphasis in original.) Valdez is the only named insured on the policy, and the Acclaim stolen from Valdez's home is the only vehicle listed in the Declarations.

Valdez argues that the policy clearly defines the Acclaim as a "covered auto" and obligates Colonial to pay for the loss of the vehicle. Conversely, Colonial contends that the phrase "your covered auto" requires that the named insured *own* the vehicle shown on the Declarations page. Colonial argues that once Valdez sold the vehicle to his son, the vehicle was no longer Valdez's covered auto for purposes of property-loss coverage.

1. It was only after the trial court granted summary judgment that Colonial offered to refund to Valdez the unused portion of the premium on the policy during the loss year.

Valdez premised his oral argument primarily on the Texas Supreme Court case of *Snyder v. Allstate Insurance* Co, 485 S.W.2d 769 (Tex.1972). In *Snyder,* a father had purchased a car for his minor daughter who did not live in the father's home. Although the car was considered the property of the minor daughter, the father held legal title and listed the vehicle on his insurance policy. Following an automobile accident, Allstate challenged the coverage on the vehicle. Allstate argued that the car was in actuality the daughter's and, therefore, the father was not the true owner. Consequently, no coverage was due under the policy. The supreme court rejected Allstate's argument, holding:

'Owned automobile' is defined in the policy as:

(a) a private passenger, a farm or utility automobile described in this policy for which a specific premium charge indicates that coverage is afforded. . . .

It is undisputed that a specific premium charge was paid on the specific automobile in question; therefore, the automobile was an 'owned automobile.' Allstate argues that in addition to the definition of 'owned automobile' the policy requires that actual ownership of the automobile be in the named insured. The policy does not so provide, and we find no rule of law which would compel us to add such requirement.

*Id.* at 771. Thus, *Snyder* stands for the proposition that under the terms of Snyder's insurance policy, paying a premium and listing a vehicle on that insurance policy met the definition of "owned automobile," and thus the question of legal or equitable ownership became irrelevant.

Unfortunately for Valdez, there are some significant and important distinctions between *Snyder* and the instant case.

Colonial did not, however, ever offer to refund the previous year's premium collected from Valdez. Valdez rejected Colonial's offer, and this appeal followed.

First, *Snyder* involved a vehicle purchased by a parent for a minor child, although a resident of a different household, whereas here, Rene is an adult son involved in an arms-length transaction with his father necessitating a new lienholder on the automobile. Second, in *Snyder*, the named insured remained the record titleholder. Here, Valdez transferred title to his adult son and retained, at most, possession and control of the vehicle in his son's absence.

Both parties cite and rely upon *Black v. BLC Ins. Co*, 725 S.W.2d 286 (Tex.App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.). In *Black*, BLC issued an automobile insurance policy to Thomas Webster covering his 1972 Dodge. *Black*, 725 S.W.2d at 286. Webster sold the car to Linville, a stranger, and one week later Linville sold the car to Sanchez, a third party. *Id.* One month later, Sanchez was involved in a collision with a car driven by Black, who received injuries. *Id.* In determining whether BLC had a duty to defend or indemnify Sanchez's estate under the insurance policy issued to Webster, the court confronted the issue of whether coverage was afforded under Webster's policy since the vehicle was still listed on the Declaration's page of Webster's policy and the policy was still in full force and effect. Black argued that coverage should be afforded under the holding in *Snyder*. The court rejected Black's argument and distinguished *Snyder* on two bases: (1) there existed no relationship between the named insured, Webster, and the final owner, Sanchez, that would have permitted Webster to exercise any *right of control* over the vehicle; and (2) Webster had not only divested himself of record title to the automobile, but he also had relinquished all *right to*

*possession and control* of the vehicle. *See id.* at 288.

Colonial relies upon the following language in *Black* to buttress its claim: "[W]e hold that Webster's ownership of the car was a prerequisite to coverage under this policy." *Id.* Valdez on the other hand, finds support in this language of the opinion: "[T]he use of the word 'your' in this policy means that Webster had to own, *possess*, or at least, as in *Snyder*, *control* the use of the car in order for coverage to exist." *Id.* (emphasis added). Thus, *Black* seems to initially require ownership, but then broadens coverage to include those individuals in possession or control of the covered vehicle.

We conclude, however, that *Black* is also distinguishable from the present case. *Black* involved a transfer of legal title from Webster to Linville and then from Linville to Sanchez, neither of whom had any familial relationship with Webster, and Webster completely divested himself of all possession and control of the vehicle. In the instant case, the exchange involves an intra-family transaction between father and son, after which the father continued in his possession and control of the vehicle. Valdez's uncontroverted affidavit, which we must accept as true in a summary-judgment context,[2] states the following: "On or about December 27, 1994, I transferred title in the car to my son RENE VALDEZ who at the time was working in Mexico City, Mexico. Since my son could not take the car to Mexico City, I kept the car at my house wherein I used the vehicle and controlled its use." Valdez goes on to state in his affidavit that, at the time of the theft, the automobile was in his "possession and control."[3] Although neither *Snyder* nor

---

**2.** The standards for reviewing a motion for summary judgment are well established: (1) the movant must show that no genuine issue of material fact exists; (2) evidence favorable to the nonmovant will be taken as true; and (3) every reasonable inference must be indulged in favor of the nonmovant and any doubts resolved in its favor. *See Nixon v. Mr.*

*Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex.1985).

**3.** The dissent characterizes as conclusory Valdez's statements that the vehicle was in his "possession and control" when it was stolen. We disagree. The phrase "possession and control" is merely used as a shorthand rendi-

*Black* are directly on point, it would seem by applying *both Snyder and Black* to the present case, a material fact dispute is presented as to whether property damage coverage existed for Valdez. The summary-judgment record establishes that the vehicle is listed on the policy held by Valdez, satisfying *Snyder,* and that Valdez retained exclusive possession and control of the vehicle in his son's absence, satisfying *Black.* To the extent that a material fact dispute is presented, we sustain Valdez's first point of error.

### Insurable Interest

■ Colonial argued, and the trial court agreed, that there was still an issue presented as to "insurable interest," an issue which the trial court eventually resolved against Valdez. The critical issue to be determined is whether the insurance company has demonstrated in this summary-judgment record, as a matter of law, that Valdez had no insurable interest in the vehicle.[4]

■ For Valdez to recover under the automobile insurance policy, he need only have an insurable interest in the vehicle; ownership of the covered vehicle is not required. *See State Farm Mut. Auto. Insurance Co. v. Kelly,* 945 S.W.2d 905, 907 (Tex.App.—Austin 1997, writ denied) (citing *Smith v. Eagle Star Insurance Co.,* 370 S.W.2d 448, 450 (Tex.1963)). An insurable interest exists when the insured "derives pecuniary benefit or advantage by the preservation and continued existence of the property or would sustain pecuniary loss from its destruction." *Smith,* 370 S.W.2d at 450; *see also* Couch on Insurance, *Insurable Interest* § 41.1 (3d ed.

1997) ("Insurable interest may be defined as any lawful and substantial economic interest in the safety or preservation of the subject of the insurance free from loss, destruction, or pecuniary damage."). The purpose of the insurable interest requirement is to discourage the use of insurance for illegitimate purposes. *See First Preferred Ins. Co. v. Bell,* 587 S.W.2d 798, 802 (Tex.Civ.App.—Amarillo 1979, writ ref'd n.r.e.).

■ While an insurable interest "is not dependent upon an absolute right to ownership of, or possession of, property, and while neither legal nor equitable title is necessary, a person must have such a right or interest as the law will recognize and protect." 44 C.J.S. *Insurance* § 219 (1993). If a claimant cannot suffer any pecuniary loss or derive any benefit from the property, he has no insurable interest. *See Jones v. Texas Pac. Indem. Co.,* 853 S.W.2d 791, 794 (Tex.App.—Dallas 1993, no writ).

The Texas Supreme Court considered what constitutes an insurable interest in *Smith v. Eagle Star Insurance Co.* In *Smith,* a house located on land owned by the State was destroyed by fire. *Smith,* 370 S.W.2d at 449. It was undisputed that Mrs. Smith had undisturbed use of the house prior to and at the time she purchased fire insurance on the house and at the time the loss occurred. *Id.* at 450. Because the fire caused her a loss of this use, the court held that Mrs. Smith was entitled to the insurance proceeds because she held an insurable interest in the property. *Id.* at 451.

Similar circumstances dictated the finding of an insurable interest in *State Farm*

tion to assert Valdez's factual dominion over the automobile. We believe that the failure of the affidavit to allege factual minutiae regarding each detail and circumstance of Valdez's possessory dominion does not render the affidavit defective as the dissent contends.

4. An interesting issue that we need not address is who has the burden on this issue. Generally, where coverage appears to be pres-

ent from the face of the policy, the burden is on the insurance company to show otherwise. *See generally American Home Assurance Co. v. Safway Steel Prods. Co., Inc.,* 743 S.W.2d 693, 702 (Tex.App.—Austin 1987, writ denied) ("because the insurer drafted the policy and could have made clear its intention to exclude coverage ... the rules of construction require it to bear the burden of ambiguity.")

*Mutual Automobile Insurance Co. v. Kelly.* Mr. Kelly purchased and placed on his existing automobile insurance policy a vehicle that later turned out to be stolen. *Kelly,* 945 S.W.2d at 907. When the vehicle was confiscated and returned to its rightful owner, Kelly filed a claim with State Farm. *Id.* The court held that the vehicle was covered under Kelly's policy because Kelly, a good-faith purchaser for value, would have derived a benefit from the continued use of the car and suffered a pecuniary loss when it was confiscated. *Id.* at 908.

In *Dean v. Lowery,* 952 S.W.2d 637, 639 (Tex.App.—Beaumont 1997, pet. denied), Giles Lowery bought a truck for his son's use but put the title, insurance, and financing documents in his own name. Giles later sold the truck to his son, Rory Lowery. *Id.* at 639–40. Insurance coverage was then issued in the son's name, but the indebtedness owed on the truck and the truck's title remained in Giles's name. *Id.* Rory was involved in an accident while driving the truck. *Id.* at 639. The court held that although the evidence of ownership was ambiguous, Rory had an insurable interest in the truck based on his "use and possession of the vehicle" and his alleged efforts to pay off the note. *Id.* at 640.

The dissent cites *Gulf Insurance Co. v. Winn,* 545 S.W.2d 526 (Tex.Civ.App.—San Antonio 1976, writ ref'd n.r.e.) for the proposition that there exists a stricter standard for finding an insurable interest in a vehicle for property loss coverage than for liability coverage. *See* 545 S.W.2d at 528 ("It is generally recognized that an 'insurable interest' in an automobile is quite different when applied to liability insurance, than when applied to a collision or comprehensive loss.").[5] The dicta alluded to, however, merely states that the standards are *different.* The holding of *Gulf Insurance* explains that to find an insurable interest in an automobile under a liability insurance policy, one need only establish an interest in the maintenance, possession, or use of the vehicle. *Id.* And, the authorities cited in *Gulf Insurance* stand for the further proposition that to find an insurable interest for property loss coverage one must establish a pecuniary benefit or loss in the property. *See, e.g.,* 44 C.J.S. *Insurance* § 219 (1993) ("In general a person has an insurable interest in the subject matter insured where he has such a relation or connection with, or concern in, such subject matter that he will derive pecuniary benefit or advantage from its preservation, or will suffer pecuniary loss or damage from its destruction, termination, or injury by the happening of the event insured against."); 7 Am.Jur.2d *Automobile Insurance* § 19 (1997) ("The general rule that anyone has an insurable interest in property who derives a benefit from its existence or would suffer loss from its destruction has been applied to motor vehicle insurance."). Furthermore, the dissent never explains why this difference between property-loss coverage and liability coverage in the context presented here establishes, as a matter of law, that Valdez had no pecuniary interest in the automobile in question.

 Valdez seeks to establish at least a factual dispute within the summary-judgment record that he both suffered a potential loss and was denied a pecuniary benefit as a result of the theft of the car. As to the potential loss, the facts describing the transaction between the parties evidences a relationship akin to an implied bailment;[6] it appears from the

---

[5.] We find it ironic that the dissent relies upon *Gulf Insurance* at all. The court in *Gulf Insurance* followed the decision in *Snyder* and found coverage despite a lack of either legal or equitable title; the court noted that, like Colonial, Gulf Insurance accepted the premium paid by the insured and never returned it; and the court found that operation, maintenance, or use of an automobile was a sufficient interest to validate the automobile insurance policy issued by Gulf Insurance. *Id.* at 527–28.

[6.] Although the parties in the trial court did not use the term "bailment" to describe the

record that the son agreed to leave possession and control of the vehicle with his father while away in Mexico City and the father agreed to keep the insurance premiums current on the car and to maintain the car and keep it safe within his custody. Valdez's uncontroverted affidavit in the summary-judgment record, which we are bound to accept as true, stated: "[A]fter the vehicle was stolen, I made an agreement with my son, Rene Valdez, that I would reimburse him for the loss since the vehicle was in my possession and control when it was stolen. This agreement was made in order to avoid any type of litigation within the family."

■ Colonial argues that this agreement, made after the loss, cannot be considered in determining insurable interest. We disagree. Insurable interest regarding loss or damage to property is always based on *potential* liability, not on *absolute* liability. If A borrows B's car and negligently damages it, A's offer to pay for damages, made after the loss occurred, merely acknowledges the possibility of some potential liability or responsibility on A's part. *Potential* liability or responsibility is generally what insurance is designed to protect; Valdez was potentially liable for the damage or loss of Rene's vehicle. The fact that Valdez continued to pay the insurance premiums on the car evidenced his understanding with Rene that Valdez would be responsible for any damage or loss while the vehicle was in his possession and control. Moreover, a denial of coverage after Colonial accepted over a year's insurance premiums to cover, among other things, this risk of loss would grant to Colonial a significant windfall.

Finally, Valdez makes a cogent argument that he was denied a benefit in the property. According to the summary-judgment evidence, while Rene was living in Mexico City, Valdez had the exclusive right to possession, use, or control of the vehicle. Valdez exercised this right, and continued his use of the vehicle in Rene's absence. Thus, the deprivation of this right through the loss of the vehicle denied Valdez his accustomed use of the car.

Because the summary-judgment record fails to establish, as a matter of law, that Valdez experienced no pecuniary detriment or loss of benefit as a result of the theft of the vehicle, we conclude that there remains a material fact dispute concerning whether Hector Valdez had such an interest in the 1992 Plymouth Acclaim, and thus an insurable interest in the vehicle at the time of the loss. Therefore, Colonial has not shown itself entitled to judgment as a matter of law. We sustain Valdez's second point of error.

Because we sustain Valdez's second point of error, we need not address his remaining point regarding the alleged ambiguity of the insurance policy.

## CONCLUSION

Because the trial court erred in rendering summary judgment that the vehicle in question was not a covered automobile and also that Hector Valdez had no insurable interest in the vehicle listed on the Declaration page of his Colonial policy for which an insurance premium had been paid and collected, we reverse the judgment of the district court and remand this cause for further proceedings consistent with this opinion.

JAN P. PATTERSON, Justice, dissenting.

Within seven weeks of purchasing insurance for his 1992 Plymouth Acclaim auto-

---

relationship between Valdez and his son, we use it here as a descriptive term that appears to fit the fact pattern, which was fully pleaded during the summary-judgment proceedings.

A contract of bailment may arise by implication of law if through the proof of sufficient circumstances the implied relationship of bailor and bailee is shown to rest upon a substantive foundation. Acceptance of the property and of the responsibilities accompanying the relationship may be proved directly or by circumstances. *Sanroc Co. Int'l v. Roadrunner Transp. Inc.*, 596 S.W.2d 320, 322 (Tex.Civ.App.—Houston [1st Dist.] 1980, no writ).

mobile, appellant Hector Valdez sold the vehicle, received money for the sale, and transferred title to his adult son, Rene. With a new co-signer, Liliana De La Garza, Rene obtained financing for the vehicle from Mercantile Bank in Brownsville. Although Valdez informed Colonial of the change in lienholder two days after the sale, he never informed Colonial of the change in title and, hence, the change in ownership. Because Rene was working in Mexico City at the time of the sale and, according to Valdez's affidavit, "could not take the car to Mexico City," he left the vehicle in the parking lot of Valdez's apartment building. The car was stolen from the lot a year later.

This is an action for a declaratory judgment of nonliability on a property insurance policy issued by Colonial to Hector Valdez. Colonial brought suit against Hector Valdez and others seeking a declaratory judgment that Hector Valdez's automobile insurance policy did not provide coverage to him for the loss of a stolen automobile for which he did not have legal or equitable title.[1] The trial court rendered judgment in favor of Colonial. Since the parties agree that Valdez must have an insurable interest in the automobile to recover for the theft, it becomes our task to determine what right Valdez had to the vehicle and whether it was sufficient to constitute an insurable interest. Because the summary judgment evidence establishes as a matter of law that Valdez had no insurable interest at the time of the loss, I believe that the trial court correctly granted summary judgment in favor of Colonial, and I respectfully dissent.

### The Policy

The policy in question was issued in renewal of a policy that Valdez first procured on November 9, 1994. The policy period of the renewed policy was from November 9, 1995 through November 9, 1996. On December 29, 1994, Valdez submitted a Change of Policy Request to Colonial to report the new lienholder as Mercantile Bank.[2] The question is whether the insurance policy issued to Hector Valdez affords property loss coverage to him for the theft of an automobile he no longer owned. We turn for guidance first to the language of the policy.

The policy specifically prohibits the transfer of any interest in the policy without the company's written consent.[3] An endorsement specifically excludes the automobile from coverage if it is not garaged and used in the United States and, further, it excludes coverage to any person who does not live in the United States.

The policy is standard in form and provides comprehensive coverage to "the named insured." In addition to the Declarations page, the policy consists of seven parts. The parties do not dispute that the suit for declaratory judgment implicates only the portion of the policy concerning property damage or loss to the automobile, designated Part D. Liability for loss is limited to the cash value of the stolen or damaged property, the amount necessary to repair or replace the property, or the amount stated in the Declarations portion of the policy.

In addition to property loss or damage, the policy also contains coverage for liability and personal injury coverage. Part A of the policy provides liability coverage for

---

1. The case was settled as to the other defendants. The notice of appeal named only Hector Valdez as appellant.

2. Except for the addition of Mercantile Bank as a lienholder, no additional information was provided by Valdez on the request form. Although the form requested changes in information, including name; additional drivers and their social security numbers, birth date, and relationship to the insured; additional vehicles; use of vehicle and average mileage; and coverage options, the only lines completed by Valdez were the change in lienholder and the signature line containing Valdez's signature.

3. Valdez does not contend that he assigned his rights in the policy to anyone.

"covered persons," which includes "you or any family member for the ownership, maintenance or use of any auto," and "any person using your covered auto." For purposes of the policy, "family member" includes "a person who is a resident of your household." Coverage for liability loss under Part A is, of course, much broader than for property loss under Part D. Liability coverage follows the insured to any vehicle he drives.

### Insurable Interest

Colonial asserts that its policy definition of "your covered auto" imposes an ownership requirement for coverage. Because Hector Valdez sold the vehicle covered by the policy, received money, and transferred title of the vehicle to a third-party purchaser before the loss, Colonial contends that, as a matter of law, Valdez no longer had an insurable interest in the car and that the car was not "a covered auto" under the policy. Valdez contends that the insurance policy covers any vehicle listed on the Declarations page and that he had an insurable interest in the vehicle because he possessed and had control over the vehicle when it was stolen. Valdez argues that ownership is irrelevant to the issue of insurable interest.

It is well settled in Texas that an insured need only have an insurable interest in property to be covered for property loss damage. An insurable interest exists when an insured derives pecuniary benefit or advantage from preservation and continued existence of the property, or would sustain pecuniary loss from its destruction. *See State Farm Mut. Auto. Ins. Co. v. Kelly*, 945 S.W.2d 905, 907 (Tex.App.—Austin 1997, writ denied). While actual ownership is not required, *see Smith v. Eagle Star Ins. Co.*, 370 S.W.2d 448, 450

(Tex.1963), I believe it is incorrect to state, as the majority does in its interpretation of *Snyder*, that ownership is irrelevant or unimportant to the determination of an insurable interest as it applies to property insurance.

The majority ignores an important distinction in the arena of insurance law: A fundamental difference in the requirement of an insurable interest exists between property and liability coverage. *See Highlands Ins. Co. v. City of Galveston*, 721 S.W.2d 469, 471 (Tex.App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.). Property insurance policies are personal contracts for indemnity,[4] and are intended solely to indemnify the insured for his actual monetary loss by the occurrence of the disaster. "Unless the insured has sustained an actual loss the insurer has no liability." 4 Appleman, *Insurance Law and Practice* § 2107, at 16–17 (1969).[5] Liability policies, on the other hand, insure against loss arising out of legal liability, usually based upon the insured's negligence. *Id.* (citing *Members Mut. Ins. Co. v. Hermann Hosp.*, 664 S.W.2d 325 (Tex.1984)).

We have been cited to no case in which an insured who knowingly sold and transferred title to the insured property prior to loss was found to possess an insurable interest in a property loss claim. It is a prerequisite to the validity of a policy insuring against loss of, or damage to, an automobile that the person to whom it is issued have some interest in the property insured. The lack of an insurable interest, either at the time of the policy or at any time thereafter, renders the policy void and defeats a recovery on it. "A person has an insurable interest in a vehicle who derives a benefit from the existence of the

---

4. In property insurance, the insurable interest must exist both at the time of the making of the contract and at the time of the loss, while in life or liability insurance, it is sufficient if such an interest exists at the inception of the contract. *See Highlands Ins. Co. v. City of Galveston*, 721 S.W.2d 469, 471 (Tex.App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.).

5. *See also Stillwagoner v. Travelers Ins. Co.*, 979 S.W.2d 354, 360 (Tex.App.—Tyler 1998, no writ) ("If the insured has no insurable interest, the policy is invalid, there is no loss under the policy, and no recovery by the insured."); *Associated Indem. Corp. v. Walnut Hill Corp.*, 220 S.W.2d 301, 305 (Tex.Civ. App.—El Paso 1949, writ ref'd n.r.e.).

property insured, or would suffer loss if it were damaged or destroyed by the peril against which it is insured." 7 Blashfield, *Automobile Law and Practice*, § 291.3 at 115–16 (3d ed.1987).

With respect to liability insurance, however, it is axiomatic that an insurable interest may exist apart from ownership of the automobile. *Id.* § 291.3, at 121. Texas courts have recognized that what constitutes an insurable interest sufficient to support *liability* coverage of an automobile is different than that of property or casualty insurance. *See Gulf Ins. Co. v. Winn*, 545 S.W.2d 526, 528 (Tex.Civ.App.—San Antonio 1976, writ ref'd n.r.e.). In the case of liability insurance, the risk and hazard insured against is not the damage to, or loss of, the property named in the policy, but against the loss and injury caused by *the use* of the named property for which the insured might be liable.

The distinction between liability and property insurance, then, becomes the threshold focus in an analysis of whether an insurable interest exists or the nature of the interest required. The majority opinion states that Valdez premises his argument that the policy language defines the vehicle as a covered automobile "primarily on the Texas Supreme Court case of *Snyder v. Allstate Insurance Co.*" Valdez does not cite *Snyder* in his brief, and although the majority acknowledges that the case is distinguishable, it relies on *Snyder* to find the existence of a material fact dispute as to whether property damage coverage existed for Valdez. *Snyder* is distinguishable on its facts and the law it applies.

In the first instance, *Snyder* simply does not speak to the issue of insurable interest in the context of property insurance. The issue in *Snyder* is whether the named insured was covered by an automobile *liability* policy, not a property damage policy. *Snyder v. Allstate Ins. Co.*, 485 S.W.2d

769, 770 (Tex.1972). In *Snyder*, Allstate Insurance Company issued an automobile liability policy to J.B. Rhodes, who gave the car to his minor daughter. Thereafter, the daughter and a friend, Robert Snyder, were involved in a collision while Snyder was driving. Allstate brought a declaratory judgment action against Robert Snyder, his father, and their insurance company seeking a judgment that Allstate had no obligation to defend Robert Snyder or pay any claim against him arising out of the collision. Thus, the case dealt with the scope of permission by the insured, J.B. Rhodes, to a permittee, his daughter, and her authority to allow a third person to operate the owned automobile. The court concluded that Robert Snyder was a person occupying the "owned automobile" while it was being used by Rhodes's daughter with permission of Rhodes, the named insured, and that Allstate had an obligation to pay all claims arising out of the collision up to its policy limits. *Snyder*, 485 S.W.2d at 772. Because the definition of "named insured" included "any other person using such automobile with the permission of the named insured," the only relevant inquiry was the authority for the daughter as permittee to allow a third person to use the car and whether she consented to such use. Those facts were undisputed in *Snyder*.

In construing *liability* coverage of a policy, the supreme court in *Snyder* concluded that "the fact of ownership is not a material question in this case" because for any "owned automobile" the coverage extends "to or for the named insured ... or any other person who sustains bodily injury, caused by accident, while occupying the owned automobile, while being used by the named insured ... or by any other person with the permission of the named insured...." *Snyder*, 485 S.W.2d at 772. The court had no occasion to address the requirement of an insurable interest in the property damage context.[6]

---

**6.** Even apart from the law applied, *Snyder* is distinguishable on its facts. The vehicle was

not sold and title had not been transferred from the insured to his minor daughter.

*Snyder,* then, does not support the majority's position that "paying a premium and listing a vehicle on an insurance policy, by definition, characterizes it as an 'owned automobile.'" At most, *Snyder* addresses only the question of what constitutes ownership sufficient to support *liability* coverage—as opposed to property coverage—on an automobile. *See Gulf Ins. Co.,* 545 S.W.2d at 527.

In each of the cases cited by the majority in support of its conclusion, the insureds either owned or had reason to believe they owned the insured property. *See Smith,* 370 S.W.2d at 450 (insured lived on and farmed land on which subject property was located for several years and had good faith belief of ownership); *Kelly,* 945 S.W.2d at 908 (no allegation in record that insured knew or should have known that vehicle he purchased was stolen); *Dean v. Lowery,* 952 S.W.2d 637, 640 (Tex.App.—Beaumont 1997, pet. denied) (insured's father had executed bill of sale to transfer vehicle to insured and insured made note payments).[7] Valdez, on the other hand, intentionally sold the vehicle to his son. Upon completion of the transaction, it was uncontested that Rene Valdez held title to the vehicle.

Moreover, in each case cited by the majority, the destruction of or damage to the insured property had a direct, and not a mere remote or consequential, effect upon the insured. Each named insured either derived a pecuniary benefit by the preservation of the insured property or suffered a pecuniary loss when the property was destroyed or damaged. No such direct effect exists in the instant case. When Rene went to Mexico to work, he left the vehicle parked at Valdez's apartment residence, but Valdez's use of the car was dependent on Rene's continued permission.[8] Valdez did not receive any benefit from the vehicle nor did he suffer any pecuniary loss from its theft. *See Jones v. Texas Pac. Indem. Co.,* 853 S.W.2d 791, 795 (Tex.App.—Dallas 1993, no writ).

### Summary Judgment

The procedural posture of this case is important. The trial court rendered summary judgment in favor of Colonial. The majority would reverse and remand on the ground that Valdez has raised a material question of fact. Because I believe that Colonial carried its burden and established that it is entitled to summary judgment as a matter of law, and that Valdez failed to raise a material fact question, I would affirm the judgment of the trial court.

We follow the usual standard of review in summary judgment cases. The basis of a motion for summary judgment is that no genuine issue exists for any material fact

Hence, the right to own, possess, and control the vehicle remained with the named insured. The court stated: "In this case, it is undisputed that the named insured parent retained the certificate of title in his name and that he gave permission of use to his minor daughter. The parent-child relationship here governed how [the daughter] used the car, since it is undisputed that both [the daughter] and [the father] recognized that [the daughter's] use was subject to the instructions given her by her father." *Snyder v. Allstate Ins. Co.,* 485 S.W.2d 769, 773 (Tex.1972).

7. The holding in *Black v. BLC Insurance Co.,* 725 S.W.2d 286, 288 (Tex.App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.) is unequivocal: "We hold that [the named insured's] ownership of the car was a prerequisite to coverage under the policy." 725 S.W.2d at 288. *Black,* like *Snyder,* involved a liability policy.

Hector Valdez entered into an arm's length transaction with his adult son when he sold the vehicle. Rene, by taking title to the vehicle and obtaining new financing, relegated Valdez to the status of Webster, the named insured in *Black* with no insurable interest in the insured property. As the court noted: "A finding of coverage under these facts would deprive an insurance company of the right to choose its customers and delegate that power to the insured when choosing a buyer." *Id.;* see also *World Fire & Marine Ins. Co. v. Puckett,* 265 S.W.2d 641, 642 (Tex.Civ.App.—San Antonio 1954, writ ref'd n.r.e.) (at time of loss, insured had completed sales transaction and therefore had no insurable interest).

8. As between the buyer and the seller, the seller has no right to possess or control the vehicle after the sale. *See Gulf Ins. Co. v. Bobo,* 595 S.W.2d 847, 848 (Tex.1980).

and the movant is entitled to summary judgment as a matter of law. *See* Tex.R. Civ. P. 166a(c). When reviewing a summary judgment granted on general grounds, we are obligated to consider whether *any* theories asserted by the summary judgment movant will support the summary judgment. "When a trial court's order granting summary judgment does not specify the ground or grounds relied on for the ruling, summary judgment will be affirmed on appeal if any of the theories advanced are meritorious." *Rogers v. Ricane Enters. Inc.*, 772 S.W.2d 76, 79 (Tex. 1989). In addition, the appealing party must negate all grounds on appeal. *See State Farm Fire & Cas. Co. v. S.S.*, 858 S.W.2d 374, 381 (Tex.1993).

As recited by the majority, we review the evidence in the light most favorable to the nonmovant, accept all of the nonmovant's factual assertions as true, and resolve any doubt in the nonmovant's favor. *See Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex.1985). As the movant, the burden was on Colonial to establish that there was no genuine issue of material fact and that it was entitled to judgment as a matter of law. *Id.* Once Colonial established a right to summary judgment, the burden of proof shifted to Valdez to present evidence sufficient to raise a material question of fact. *See City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex.1979).

In support of its motion for summary judgment, Colonial relied upon (1) Valdez's pleadings which included a verified motion to transfer venue, (2) Valdez's Response to Colonial's Request for Admissions, and (3) an affidavit of the insurance agent with attachments. Valdez's summary judgment proof consisted of a two-paragraph affidavit. The following facts were undisputed:

- The stolen vehicle was not owned by Hector Valdez at the time of the loss;
- The vehicle had been sold to Rene Valdez approximately one year before the loss;
- The Texas title for the vehicle listed Rene Valdez as owner at the time the vehicle was stolen;
- Mercantile Bank was a lienholder in the purchase of the vehicle by Rene Valdez, and Liliana De La Garza was a co-signer on the note;
- Colonial never approved the assignment of rights under the policy from Hector Valdez to Rene Valdez; and
- Rene Valdez resided in Mexico.

Because Colonial carried its burden that it was entitled to judgment as a matter of law and that there was no genuine issue of material fact, the burden then shifted to Valdez to adduce proof sufficient to raise a fact question.

After reciting that he purchased the insurance on November 9, 1994 and transferred title to Rene who was working in Mexico [9] on December 27, 1994, Valdez stated in his affidavit: "Since my son could not take the car to Mexico City, I kept the car at my house wherein I used the vehicle and controlled its use." In the second paragraph, Valdez described an agreement he made with his son to reimburse him for the loss "since the vehicle was in my possession and control" when it was stolen. Valdez explained that the agreement was made "in order to avoid any type of litigation within the family."

Valdez's mere recital that he had possession and control of the vehicle when it was stolen is a legal conclusion [10] unsupported by any facts. The affidavit was devoid of any facts showing, for example, the nature or extent of use or control, the terms of

9. In his affidavit submitted in response to Colonial's summary judgment motion, Valdez testified that Rene was already working in Mexico City at the time of the sales transaction. In his brief on appeal, however, he states that Rene "soon thereafter went away to work in Mexico City." This contradiction looms large since the entirety of Valdez's proof in the summary judgment motion is an affidavit composed of two paragraphs.

10. Nor will factual conclusions suffice to defeat a summary judgment motion. Conclusory factual statements are not proper as summary judgment proof. *See Purcell v. Bellinger*, 940 S.W.2d 599, 602 (Tex.1997).

the "agreement" he had with Rene, the actual owner, concerning the possession, use or control of the vehicle,[11] or even who paid the premiums on the insurance. As a matter of law, the affidavit is insufficient to raise a fact issue to defeat the summary judgment motion.[12] His affidavit did not set forth such facts as would be admissible in evidence as required by Rule 166a(f). An averment that Valdez had "possession and control," without more, has no probative force to defeat a motion for summary judgment.[13]

Valdez also argues, and the majority accepts, the proposition that his agreement—after the loss—to reimburse Rene for the loss of the vehicle is sufficient to confer an insurable interest, or at least, to raise a fact question as to whether one exists.[14] I disagree. Valdez's promise to reimburse Rene for the loss was made after the theft of the vehicle; hence, the promise does not affect whether Valdez had an insurable interest in the vehicle either at the time of the making of the insurance contract or at the time of the theft. *See First Preferred Ins. Co. v. Bell,* 587 S.W.2d 798, 802 (Tex.Civ.App.—Amarillo 1979, writ ref'd n.r.e.). The insurable interest of the parties to an automobile

Unsupported conclusory statements are not credible and are not susceptible to being readily controverted. *See* Tex.R. Civ. P. 166a(c); *Ryland Group, Inc. v. Hood,* 924 S.W.2d 120, 122 (Tex.1996).

11. I find no basis in the record—apart from Valdez's inadmissible conclusions—for the proposition that Valdez possessed, used, or controlled the vehicle. To survive the motion for summary judgment, Valdez was required to adduce actual proof to raise a fact question with respect to possession, use, or control. Even an implied contract of bailment must rest upon a substantive foundation and cannot arise from mere conjecture or possibility. *See Rust v. Shamrock Oil & Gas Corp.,* 228 S.W.2d 934, 936 (Tex.Civ.App.—Amarillo 1950, no writ). The record is also devoid of any proof that (1) Valdez continued to make the premium payments or (2) accepted any responsibilities concerning the vehicle. *See Hoye v. Like,* 958 S.W.2d 234, 237 (Tex.App.—Amarillo 1997, no writ) (although bailor-bailee relationship may be established by direct or circumstantial evidence, the evidence must show that person sought to be charged as bailee knew he was assuming the relationship and responsibilities). Valdez did not plead or otherwise argue in the trial court or before this Court that the requirement of insurable interest was met by an implied bailment.

12. Because legal conclusions do not constitute competent evidence, they are insufficient to raise a fact question to defeat a summary judgment motion. *See, e.g., Anderson v. Snider,* 808 S.W.2d 54, 55 (Tex.1991) (statement in affidavit by defendant-lawyer that he did not breach contract with his client and was not guilty of any negligence or malpractice was wholly conclusory, rendering it incompetent to support summary judgment); *Mercer v. Daoran Corp.,* 676 S.W.2d 580, 583–84 (Tex. 1984) (statement in affidavit that loan was

"renewed and extended" was a legal conclusion insufficient to raise an issue of fact); *Ellis v. Jansing,* 620 S.W.2d 569, 571 (Tex. 1981) (affidavit averring party "held open, notorious, exclusive, continuous and adverse possession" to property in question held ineffective to raise fact question); *Life Ins. Co. of Virginia v. Gar–Dal, Inc.,* 570 S.W.2d 378, 382 (Tex.1978) (statement in affidavit that "all offsets and payments had not been credited" to a note held insufficient to raise question of fact).

13. *See Brownlee v. Brownlee,* 665 S.W.2d 111, 112 (Tex.1984). In *Brownlee,* the plaintiff wife sued her former spouse for breach of a written settlement agreement contained in an agreed judgment of divorce. In response to a motion for summary judgment, the spouse attempted to raise a fact question in an affidavit by averring that the agreed judgment had been "amended and modified since the date of their execution and entry ... including, but not limited to, modification of my obligation to make either support and/or periodic payments as set forth therein." *Id.* The supreme court concluded that the affidavit was insufficient to raise a question of fact. The court stated: "If this had been a trial on the merits and the only thing to which [the spouse] testified was that his obligation had been modified, the trial court would have been required to instruct a verdict against him. [His] affidavit ... should have gone further and specified factual matters such as the time, place, and exact nature of the alleged modification." *Id.*

14. The agreement, the entire text of which is set forth in the majority opinion, is also conclusory and fails to raise a fact question. It fails to give any of the terms of the agreement, whether it was oral or written, or even the manner and amount of payment for the loss.

insurance contract must be determined by the facts existing at the time of the loss.[15] Moreover, the fact that Valdez agreed to reimburse Rene for the loss *after* the theft is evidence that no implied contract of bailment existed before the loss; indeed, there is no evidence in the record to indicate that Valdez accepted any responsibilities commensurate with a bailment.[16]

Put simply, Valdez has provided no proof of any facts that would give rise to an insurable interest. At best, he stands in the shoes of a borrower or a gratuitous agent who has no pecuniary interest in preserving the property. An insurable interest is not held by a person who has no legal title or equitable interest and merely exercises custody awaiting the immediate exercise of another's right of possession. Because Colonial has established the transfer of legal title and equitable interest from Hector Valdez to Rene and Valdez has failed to adduce proof sufficient to show any interest in the property apart from mere custody, I believe the trial court correctly granted summary judgment in favor of Colonial.

I conclude that Valdez has failed to adduce any proof sufficient to raise a fact question to defeat Colonial's showing of entitlement to summary judgment. Accordingly, as a matter of law, Valdez does not have an insurable interest in the property that is the subject of the policy and he should not be able to recover the value of the stolen vehicle under the policy. I would affirm the judgment of the trial court.

---

**15.** A policy of property insurance is a personal contract for indemnity for the insurable interest possessed by the insured at the time of the issuance of the policy and at the time of the loss. *See, e.g., Maryland Cas. Co. v. Palestine Fashions, Inc.,* 402 S.W.2d 883, 888 (Tex. 1966); *Highlands Ins. Co.,* 721 S.W.2d at 471; *World Fire & Marine Ins. Co.,* 265 S.W.2d at 642; *see also* 4 Appleman § 2245, at 167; 7 Blashfield § 291.3 at 114.

**16.** Like the theatrical device of the *deus ex machina,* the bailment theory of the majority and Valdez's after-the-loss reimbursement agreement appear suddenly and unexpectedly just before the fall of the curtain to provide a contrived solution where there was an insoluble difficulty.